[Crim. No. 31696. Second Dist., Div. Five. Sept. 28, 1979.]

THE PEOPLE, Plaintiff and Appellant, v.
HAROLD W. WILLIAMS et al., Defendants and Respondents.

COUNSEL

John K. Van de Kamp, District Attorney, Harry B. Sondheim, George M. Palmer and Richard W. Gerry, Deputy District Attorneys, for Plaintiff and Appellant.

Garber & Rudof, Justin M. Groshan, Dana J. McCune and Herbert F. Blanck for Defendants and Respondents.

OPINION

**STEPHENS, Acting P. J.**—The People have appealed the dismissal of several overt acts alleged in an indictment charging defendants with conspiracy to conceal stolen property. We reverse.

Joseph Edward Wood was a claims manager for the Hartford Insurance group. In that capacity he had knowledge of and access to a confidential insurance investigatory file on one June Walker who had sustained catastrophic brain damage while receiving medical treatment at UCLA. Evidence adduced before the grand jury established that Wood sold the file or a photo-copy of the file to David H. Cheren and George S. Goldberg, who are attorneys. Cheren and Goldberg used the confidential file in order to assist them in their prosecution of the June Walker case.

Harold W. Williams was subsequently brought into the case by Cheren and Goldberg because of his experience as a malpractice attorney. Mr. Williams frequently referred to the file in preparing the June Walker case for trial. Although trial in that case did begin, the parties agreed to settlement prior to its conclusion. Pursuant to the terms of this agreement, Cheren and Goldberg received $445,000 for attorneys' fees and costs. Payment was received by check dated October 28, 1974.

The evidence is that sometime in January 1975, Wood demanded an additional payment of money for the confidential file that he had obtained for Cheren and Goldberg; that Cheren made that payment during the same month; that Wood gave a written acknowledgment for such payment. In February 1975, the file was seized from the office of Cheren and Goldberg pursuant to a search warrant.[1]

On February 17, 1977, the grand jury returned an indictment against Cheren, Goldberg, Williams, and Wood charging them in count 1 thereof with receiving and concealing stolen property in the form of a confidential Hartford Insurance Company file in violation of section 496 of the Penal Code, and in count 2 thereof with conspiracy to receive and conceal the above-mentioned stolen property in violation of sections 182 and 496. Defendants demurred to both counts of the indictment, asserting several grounds. This appeal, however, is limited to a consideration of the demurrer to portions of count 2.

Sixteen overt acts were alleged in support of the charge of conspiracy in count 2. Defendants demurred to all of the overt acts on the ground that they failed to conform to the requirements of section 1004. On August 5, 1977, the trial court sustained defendants' demurrers to overt acts 1 through 3, 5 through 6, 8 through 14 and 16. The demurrers were overruled as to the remaining overt acts 4, 7, and 15. On September 13, the trial court filed a "Judgment on Demurrer" which declared that "overt act numbers 11, 12, 13, and 14 in Count II of the indictment be and are dismissed and stricken." The prosecution has appealed the dismissal of overt acts 11 through 14.[2]

---

[1]Identification of an additional person is relevant to the disposition of this appeal. Mary Ellen Hoover was a secretary in the employ of Cheren and Goldberg. Ms. Hoover was informed about the file and its source. During the period prior to the settlement of the June Walker case, she assisted Mr. Williams in using the file in preparation for trial. Further, on several occasions she assisted Mr. Cheren in arranging for payments to Wood. Ms. Hoover testified under a grant of immunity.

[2]Prior to setting forth the allegations as to each of the overt acts, the indictment states as follows: "That at and in the County of Los Angeles and pursuant to and for the

Two events subsequent to the filing of this appeal have had the effect of reducing the numbers of both the parties and issues before this court. First, in the companion case of *Williams* v. *Superior Court* (1978) 81 Cal.App.3d 330 [146 Cal.Rptr. 311], this court addressed defendants' petition for a writ of prohibition. We there found that the statute of limitations barred prosecution of defendants for either receiving or conspiring to receive stolen property; however, we also found that there was sufficient evidence that the statute did not bar prosecution for the charges of concealing and conspiring to conceal stolen property. We therefore directed the trial court to strike all reference to "receiving stolen property" in counts 1 and 2. Hence, this court will review the dismissal of alleged overt acts 11 through 14 only as they relate to the crime of conspiring to *conceal* stolen property. Second, defendants Cheren and Goldberg have been dismissed from this appeal;[3] the only remaining defendants in this case are Wood and Williams.

The present appeal concerns the trial court's sustaining of defendants' demurrer to overt acts 11 through 14 in count 2 of the indictment. It is well settled that a demurrer raises an issue of law as to the sufficiency of the accusatory pleading, and it tests only those defects

---

purpose of carrying out the objects and purposes of the aforesaid combine, agreement, and conspiracy, the said defendants committed the following Overt Acts: SEE ATTACHMENT A." In Attachment A, overt acts 11 through 14 are alleged in the following language:

"OVERT ACT #11

"That on or about January, 1975, Eddie Wood demanded another payment of money for the confidential insurance documents given to Cheren and Goldberg.

"OVERT ACT #12

"That on or about January, 1975, money was paid to Eddie Wood by David Cheren

"OVERT ACT #13

"That on or about January 4, 1975, Eddie Wood wrote the following:

"I, Eddie Wood, have agreed to accept $7,000 (seven thousand and no/100) on above date from David Cheren, attorney, for information I allege provided by me regarding a civil action. I acknowledge he denies my allegation and has agreed to pay the above sum under duress threat of false accusations as a harassment on my part. I did not provide him such information and my accusations are false.

"This above charge may be used by him and this document may be introduced as evidence against me on behalf of David Cheren in any civil, criminal administrative proceeding against him.

"OVERT ACT #14

"That on or about January, 1975, May [*sic*] Ellen Hoover made out a receipt for certified mail #328788 for mail to be delivered to Eddie Wood, 7718 Dentrest, Dallas, Texas."

[3] We are informed that Mr. Cheren pled guilty to count 1, and that count 2 will be dismissed at the time of sentencing, Mr. Goldberg has pled guilty in a related case, and pursuant to negotiations with the district attorney, will be dismissed from this appeal.

appearing on the face of that pleading. (Pen. Code, § 1004; *People* v. *McConnell* (1890) 82 Cal. 620 [23 P. 40]; *Ratner* v. *Municipal Court* (1967) 256 Cal.App.2d 925, 929 [64 Cal.Rptr. 500].)

The trial court did not state its reasons for granting the demurrer. The defendants, however, raised several contentions in support of the demurrer.

I

Defendants' first contention is that the conspiracy ended the very latest on October 28, 1974—several months before overt acts 11 through 14 are alleged to have occurred. They, therefore, urge that the alleged overt acts in question were not committed in the *furtherance* of the conspiracy, as is required to support a conviction for conspiracy pursuant to section 184 of the Penal Code.

Since a demurrer tests only defects appearing upon the face of the accusatory pleading, the issue is limited to whether the indictment adequately alleged that the conspiracy continued beyond the time when the overt acts in question occurred, on or about January 1975. If so, defendants' first contention was not a valid basis for demurrer. Count 2 of the indictment does allege the duration of the conspiracy. It states that the conspiracy to conceal stolen property continued until "on or about the 4th day of February, 1975." This allegation includes the time when the overt acts in question were alleged to have occurred and to negate the contention that the overt acts occurred after its termination.[4]

The defendants, however, urge two theories in support of their contention. The first theory focuses upon the rule for determining the termination of a conspiracy, for purposes of the statute of limitations. They assert that a conspiracy terminates when the primary object of the conspiracy is completed. They urge that the primary object of the alleged

---

[4]In stating the duration of the conspiracy to conceal in count 2, the pleading contains an apparent clerical error. It states in effect that the conspiracy ended before it began: "during the period beginning on or about the 21st day of November 1975 and ending on or about the 4th day of February 1975." Reference to count 1—which alleges the duration of the substantive crime of concealing stolen property—makes clear that November 1973 was the intended month and year for the beginning of the conspiracy. Defendants have not raised the point in their briefs, and their contentions on appeal demonstrate that they were not misled by the error. Thus for purposes of this appeal, we deem the alleged beginning of the conspiracy to be on or about November 1973. (See *People* v. *Myers* (1934) 1 Cal.App.2d 620, 622 [37 P.2d 191].)

conspiracy to conceal the stolen Hartford file was to use the file in the prosecution of the June Walker case. In their view, that primary object was achieved when the case was settled on October 28, 1974. Thus, any alleged overt acts occurring after this date could not support a charge of conspiracy. As discussed later, this argument is premised upon an inappropriate inquiry into the evidence in reviewing a demurrer. Further, as discussed immediately below, it misconstrues the notion of the "primary object" of a conspiracy.

■ We agree with defendants that for purposes of the statute of limitations, a conspiracy terminates upon the completion of its primary object; acts committed subsequent to such completion cannot be deemed overt acts in the furtherance of the conspiracy. (*People* v. *Zamora* (1976) 18 Cal.3d 538, 554, fn. 12, 560 [134 Cal.Rptr. 784, 557 P.2d 75].) Even if we assume that this rule is applicable for purposes of testing allegations of overt acts in an indictment, defendants' theory is nevertheless flawed, because it erroneously equates "primary object of a conspiracy" with the subjective ultimate goals of the conspirators. On the contrary, a close reading of *Zamora* makes clear that the term "primary object" has a somewhat technical rather than ordinary meaning; it refers to the substantive offense which the conspirators agree to commit. (*Ibid.*)

In *Zamora,* defendants were charged with conspiracy to commit arson, conspiracy to burn insured property with intent to defraud the insurer, and conspiracy to commit grand theft. The indictment was filed on June 22, 1972. The problem before the court was to determine whether any of the alleged overt acts in furtherance of these conspiracies were committed within the three-year statute of limitation period prior to indictment. The court stated the rule that guided its decision as follows: "We conclude accordingly that acts committed by conspirators subsequent to the *completion of the crime which is the primary object of a conspiracy* cannot be deemed to be overt acts in furtherance of that conspiracy. Consequently, upon successful attainment of the *substantive offense which is the primary object of the conspiracy,* the period of the statute of limitations for the conspiracy begins to run at the same time as for the substantive offense itself." (*Id.,* at p. 560.) (Italics added.)

Thus, in order to determine when the three conspiracies terminated, the court looked to the time when the substantive offense underlying each conspiracy was completed. (*Id.,* at p. 554, fn. 12.) The court found that the central object of the conspiracy to commit grand theft was the

obtaining of insurance proceeds under false pretenses; hence, such conspiracy terminated upon the receipt of the last payment. (*Id.,* at pp. 555, 560.) In contrast, the central object of both the conspiracy to commit arson and the conspiracy to burn property with intent to defraud the insurer was *to burn the property;* the burning of the property with the requisite wrongful intent constituted the substantive offenses underlying both of these conspiracies. Therefore, they terminated at the instant that the property was burned—not when the defendants received the insurance proceeds. (*Id.,* at pp. 554, 560.) ██ It follows that, in the present case, even if we agreed with defendants' factual contention that the settlement achieved on October 28, 1974, was the primary subjective goal of the conspirators, we cannot agree that such settlement necessarily terminated the conspiracy to conceal stolen property. That conspiracy terminated when the crime of concealment terminated.

In applying *Zamora* to the present case, it must be remembered that we are reviewing the granting of a demurrer and are therefore limited to examining defects on the face of the complaint. (Pen. Code, § 1004.) Here, the substantive crime underlying the alleged conspiracy is concealment of stolen property. Thus, unless it is apparent on the face of the complaint that the crime of concealment terminated before the alleged overt acts in question occurred, defendants' argument must fail. Such defect was *not* apparent on the face of the complaint.

Defendants' second theory focuses upon the crime of concealment and the test for when such crime terminates. They argue that the crime of concealment was completed on or before October 28, 1974; hence, the conspiracy to conceal also ended upon that date. In support of this theory, they urge that the test for determining when the crime of concealment ends is that such crime ends when the concealment of the stolen property ceases to be *purposeful.* The main purpose of defendants' alleged concealment—they urge—was to use the stolen file in prosecuting the June Walker case. The purpose of such concealment was attained when the case was settled on October 28, 1974. The concealment and the conspiracy to conceal therefore is said to have ended on that date, several months prior to the occurrence of the overt acts in question.

In *Williams* v. *Superior Court, supra,* 81 Cal.App.3d at pages 344, 345, the companion case to the one currently before us, we held that concealment is a continuing crime if the facts demonstrate a continuing pattern of purposeful concealment. In *Williams* the defendants sought a writ of prohibition directing the trial court to set aside the indictment

against them pursuant to section 995. One of their theories was that there was no evidence that the alleged crimes were not barred by the statute of limitations. In addressing the crimes of concealment and conspiring to conceal stolen property, the court found substantial evidence that a pattern of purposeful concealment continued *"at least"* until October 28, 1974, when the "central purpose" of the defendants was achieved; namely, settlement of the June Walker case. (*Id.,* at p. 345.) This holding disposed of defendants' statute of limitation contention supporting their motion to set aside the indictment. It should be emphasized that this court did not go on to address the then irrelevant question of whether the pattern of purposeful concealment may have continued *after* October 28, 1974. (*Id.,* at p. 345.)

Defendants now seek to have this court resolve that question as a matter of law. We decline to do so. This court's task in *Williams* was to determine the propriety of setting aside an indictment pursuant to section 995. There we had to determine whether the evidence given before the grand jury supported a reasonable inference that a crime had been committed and that the defendants were guilty of it. (*Williams* v. *Superior Court, supra,* 81 Cal.App.3d at pp. 340-341.) Here, our task is different. We are now reviewing the sustaining of the defendants' demurrer. As previously stated, a demurrer tests only defects existing on the face of the indictment. The indictment under scrutiny clearly alleges that defendants conspired to conceal the stolen Hartford file and that such conspiracy continued until on or about February 4, 1975. We believe that these allegations are sufficient. Nor does the indictment contain additional allegations which require a conclusion that purposeful concealment ceased before overt acts 11 through 14 occurred. The question of whether the defendants did purposely conceal the Hartford file, and if so, for how long, is one of fact not law and therefore should be decided by a jury, unless the evidence is insufficient to support such a finding. A demurrer however, is not a proper means to test the sufficiency of evidence. (*People* v. *McAllister* (1929) 99 Cal.App.37, 40, 44 [277 P. 1082].) We therefore conclude that the indictment adequately alleges that overt acts 11 through 14 occured during the pendency of the conspiracy.[5]

---

[5]The issue as to the sufficiency of evidence to support an indictment is therefore not before us. Yet, because of the possibility that such an issue may arise below, we note our belief that the record of the grand jury proceedings does contain evidence which supports the allegation that purposeful concealment did continue until February 1975—after overt acts 11 through 14 allegedly occurred. First, in February the file was discovered in a filing cabinet in the back of the law offices of Cheren and Goldberg in a closed file section. We believe that the continued retention of the stolen file in the filing cabinet suggests that the property was intentionally hidden from its rightful owner. This, in turn, allows a

## II

■ Defendants also contend overt acts 11 through 14 were not directed toward the accomplishment of the agreement to conceal stolen property; hence, they were not overt acts within the meaning of sections 184 and 1104 of the Penal Code. They argue that defendant Wood's demand for additional payment was coupled with an implied threat that he would reveal the conspiracy to conceal unless his demands were met. In short, defendants Wood and Williams contend that Wood was blackmailing the other conspirators, and such blackmail was contrary to the conspiracy to conceal. The additional payment transaction, therefore, did not involve overt acts in furtherance of the conspiracy. This is defensive matter inappropriate in reviewing the sustaining of a demurrer.

■ Under California law, the crime of conspiracy cannot exist unless one or more of the conspirators commit an overt act in furtherance of the object of the conspiracy. (Pen. Code, § 184; *Feagles* v. *Superior Court* (1970) 11 Cal.App.3d 735, 739 [90 Cal.Rptr. 197].) In *People* v. *Zamora, supra,* 18 Cal.3d at pages 549-550 footnote 8, the court discussed what constitutes an overt act, in order to determine whether the statute of limitations had run on a conspiracy. The court stated in pertinent part: " 'It is not enough that the conspiracy be directed to the attainment of some unlawful object, or to the attainment of some lawful object by unlawful means; it must be directed toward the attainment of one of the objects specified. Nor is it enough that the overt act be directed to the attainment of some other object; it must be directed to the attainment of the object which brings the conspiracy within the interdiction.' " (*Ibid.,* quoting with approval *Lonabaugh* v. *United States* (8th Cir. 1910) 179 F. 476.) It follows that if an allegation of an overt act shows on its face that such act was independent of the alleged conspiracy, then it is not properly pled and subject to demurrer because it cannot support a conviction for the crime of conspiracy.

reasonable inference that such continued hiding of the file was purposeful. It is true, as defendants argue, that in *Williams* we said that the evidence showed that the "central purpose" for secreting the file "was to enable Cheren, Goldberg and Williams to use it in their preparation of the Walker case." (*Williams* v. *Superior Court, supra,* 81 Cal.App.3d at p. 345.) Nevertheless, this observation was not intended to negate the possibility of other purposes—purposes that we were not then called upon to consider. For example, one can reasonably infer from the evidence that a continuous subsidiary purpose for hiding the file was to avoid detection and prosecution for their previous acts of receiving and concealing the stolen file. This inference is buttressed by evidence concerning defendant Williams. There was testimony that Williams had frequently used the file before the case was settled; yet Williams denied ever having seen the documents after their seizure pursuant to search warrant. Such denial supports the inference that he committed acts of concealment which were purposeful in character.

In the present case, the alleged overt acts 11 through 14 recite that in January 1975 Wood demanded an additional payment of money for the confidential insurance documents he supplied; that Cheren paid Wood the money; that Wood wrote an acknowledgment of such payment, and that Mary Ellen Hoover made out a receipt for certified mail for mail to be delivered to Wood. We agree with defendants' contention that *if* the alleged additional payment was not directed toward concealment of the stolen property, then the alleged transaction did not constitute overt acts within the meaning of sections 184 and 1104 of the Penal Code. A demurrer, however, was not a proper means to decide this issue. Yet, defendants once again seek to use a demurrer to test a question of fact outside the scope of the pleadings. As previously stated, a demurrer tests defects existing on the face of the complaint. The indictment adequately alleges that the additional payment was "in furtherance of the conspiracy." Further, there is no additional matter alleged that shows that the additional payment was directed toward some other object than compensating Wood for the file that he had provided. Indeed, Wood's own acknowledgment of payment—which is alleged as overt act 13—recites that the payment was rendered for his services in the conspiracy: "I, Eddie Wood, have agreed to accept $7,000 (seven thousand and no/100) on above date from David Cheren, attorney, *for information I allege provided by me regarding a civil action.*" (Italics added.) Thus, we conclude that the indictment adequately *alleges* that overt acts 11 through 14 were in furtherance of the conspiracy to conceal stolen property. Hence, a demurrer to overt acts 11 through 14 could not be properly based upon defendants' contention that such acts were not in furtherance of the conspiracy. Whether the acts alleged were actually in furtherance of or independent of the conspiracy will be determined at trial.

### III

Defendant Williams next attacks the allegations of overt acts 12 and 14, contending that they do not constitute overt acts because they contain no language linking such acts with the conspiracy. Overt act 12 alleges that "on or about January, 1975, money was paid to Eddie Wood by David Cheren." Defendant Williams argues that "Cheren could have been paying off an election debt for all that was alleged therein." Overt act 14 alleges "that on or about January, 1975, May [*sic*] Ellen Hoover made out a receipt for certified mail # 328788 for mail to be delivered to Eddie Wood." Defendant Wood asserts that there is no language linking this act with the conspiracy. Although the overt acts in question could have been far more artfully stated, we believe they are sufficient to

withstand demurrer. Taken together, the role of these alleged acts in the conspiracy is apparent. The payment by Cheren was no "election debt," but rather money demanded by Wood as payment for documents described in overt act 11. The receipt for certified mail appears to refer to the means for sending such payment to Wood. ■ Furthermore, it is the law in California that " '. . . alleging an overt act in conspiracy cases, it is sufficient to charge that the act relied upon was performed in furtherance or in pursuance of the conspiracy . . . .' " (*People* v. *Shaw* (1953) 115 Cal.App.2d 597, 602 [252 P.2d 670].) It is, therefore, not necessary for the pleading to describe in detail the manner in which the overt act furthers the object of the conspiracy. Notice of particular circumstances of the offense is given not by detailed pleading, but rather by the transcript of the grand jury proceeding, which is available to the defendant. (*People* v. *Bowman* (1958) 156 Cal.App.2d 784, 793 [320 P.2d 70].) ■ Prior to setting forth the allegations of overt acts, the indictment states: "That at and in the County of Los Angeles and pursuant to and for the purpose of carrying out the objects and purposes of the aforesaid combine, agreement and conspiracy, the said defendants committed the following Overt Acts:" We believe that this statement coupled with the alleged acts themselves were sufficient to satisfy the requirement that overt acts in furtherance of the conspiracy be pled.

## IV

Finally, defendant Williams contends that overt act 14 is defective because the act was committed by Mary Ellen Hoover, who was granted immunity from prosecution so that she might testify for the People. Defendant argues that since Ms. Hoover was not charged with conspiracy, her act could not be deemed an overt act attributable to the other conspirators.

A reading of *People* v. *Gilbert* (1938) 26 Cal.App.2d 1, 25-26 [78 P.2d 770], convinces us that this contention lacks merit. In that case, immunity was granted to two of the persons who had allegedly participated in three conspiracies. The remaining defendants argued that the persons granted immunity could not be counted as coconspirators for purposes of determining whether a conspiracy had been committed. ■ The court rejected that contention and held that the conduct of the recipients of prosecutorial immunity could be relied upon for determining the existence of a conspiracy. The court reasoned as follows: "In prosecutions for conspiracy, the conspiracy must be proved, but it is not essential to the conviction of coconspirators that another or all other coconspirators shall

be tried and convicted. It is only where one is convicted and another or others are acquitted, resulting in a repugnancy upon the record, that the only convicted conspirator may be discharged. Where, as in the instant case, the discharge of an alleged coconspirator is not inconsistent with his guilt, but simply bars a subsequent prosecution of him, it does not invalidate the conviction of his coconspirators." (*Ibid.*)

As in *Gilbert*, the grant of immunity to Ms. Hoover is not inconsistent with her culpability as a coconspirator. Her acts in furtherance of the conspiracy may therefore be considered in establishing the culpability of her fellow coconspirators. (See, also, *People* v. *Hadden* (1947) 79 Cal.App.2d 635 [180 P.2d 371], where the court upheld defendant's conviction for burglary in the first degree; the court held that the act of holding a gun committed by the defendant's confederate was properly imputed to the defendant, notwithstanding that the confederate had been granted immunity from prosecution so that he might testify for the prosecution.)

The judgment dismissing overt acts 11 through 14 pursuant to the granting of the demurrer is reversed.

Ashby, J., and Hastings, J., concurred.