[Civ. No. 24091. Fourth Dist., Div. One. Oct. 8, 1981.]

RICHARD K. LIVETT, Plaintiff and Appellant, v.
F. C. FINANCIAL ASSOCIATES, LTD., et al., Defendants and
Respondents.

**COUNSEL**

Joel C. Estes for Plaintiff and Appellant.

Seltzer, Caplan, Wilkins & McMahon, Gerald L. McMahon, James B. Person, Orrick, Herrington & Sutcliffe, William L. Riley, George A. Yuhas, Platt, Tebbetts & Peterson, Harold F. Tebbetts, Linda E. Boelhauf and Sanford R. Demain for Defendants and Respondents.

**OPINION**

**FROEHLICH, J.***—This appeal is from a summary judgment in favor of certain of the defendants based upon the statute of limitations. We are of the opinion that facts presented by the plaintiff are susceptible of inferences which could lead a trier of fact to conclude that tortious acts were committed within the statutory period prior to the filing of the effective amendments to the complaint; therefore the granting of the motion for summary judgment was erroneous and we must reverse and remand the case for trial.

---

*Assigned by the Chairperson of the Judicial Council.

*Facts*

The asset which was the subject of the various transactions in this case is a 32-acre tract of land in La Jolla. Prior to the participation of the appealing defendants, the land was owned by a Mr. and Mrs. Sawyer, who had entered into a contingency compensation agreement with Livett for the development of the land. In May of 1974, the Sawyers sold the realty to F. C. Financial Associates, Ltd. (Associates) for $1.18 million, consisting of $510,000 in cash and a note secured by a deed of trust in the sum of $670,000. Concurrently with the sale, Associates entered into a development loan with Toronto Dominion Bank of California (Bank) resulting in the creation of a note and deed of trust in the sum of $1.8 million. The Sawyers subordinated their deed of trust to the Bank's new deed of trust, and also specifically agreed that their note from Associates was a nonrecourse note, their only remedy in the event of default being foreclosure of their deed of trust.

On May 20, 1974, Livett relinquished his contract with the Sawyers and entered into a consulting agreement with Associates, which was guaranteed by Associates' parent corporation, First City Financial Corporation, Ltd. (First City). Under the terms of the agreement, Livett undertook broad and long-range responsibilities pertaining to the development of the property, including supervision of: preparation of feasibility studies, preparation of plans and specifications, compliance with all governmental requirements, actual construction and improvement of the property, and the promotion and sale of developed lots. Livett was to be compensated by certain current cash payments and by a 50/50 split of profits (according to a detailed formula) from eventual sale of the developed property. The agreement identified Livett as an "independent contractor" and provided that the consulting arrangement with Associates was not to constitute him either a partner or an employee. With respect to potential early termination, the agreement provided: "If it reasonably appears at any time during the development of the Project, that the development has been financially unsuccessful, and that the continuance of the development of the Project will lead to continued losses, then Financial may, with the reasonable concurrence of Consultant, terminate this Agreement and the further rights and obligations of the parties after the effective date of termination . . . ."

Early in 1975, bids were received for development of the realty which were substantially higher than had been contemplated. Associates informed Livett that continuation of the project was not feasible finan-

cially, and discontinued payments on the development loan to Bank. While Livett continued to interest himself in transactions involving the realty, he ceased development and other work in April of 1975.

Bank filed notice of foreclosure of its deed of trust on April 1, 1975, and purchased the realty by application of $650,000 of its note claim upon Associates. After sales and other disposition efforts continuing throughout 1975 and 1976, the realty was ultimately deeded from Bank to a newly formed corporation, Lexington Properties, Inc., and then re-transferred to that corporation's sole shareholder, Philip Ehrlich.

Livett's original complaint, filed in June of 1977, charged that Associates and First City had breached their development contract by unreasonably terminating development work. The defendants who are parties to this appeal were joined by amendment to the complaint filed June 22, 1979—Bank, certain of its officers, and the various other corporate entities and individuals who came on the scene in 1976. The causes of action stated in the amended complaint (and clarified in a subsequent amendment) are in tort, alleging a conspiracy to deprive Livett of his compensation to be derived from development of the realty, and to terminate the "equitable" interest he had in the realty by virtue of his development agreement. This plan was to be achieved by means of an agreement between Bank and First City, entered into at the time of foreclosure, whereby Bank would acquire the property on behalf of First City (the parent of the theretofore owner, Associates), and would agree that it would be resold to First City for the amount of Bank's investment in the project—some $900,000. The effect of this agreement, it is contended, was to render the foreclosure sale a sham— it resulted in no actual change of ownership in the realty, and had as its sole purpose the destruction of both the Sawyers' and Livett's interests in the realty. This conspiracy was then furthered by sales efforts on behalf of First City and an ultimate sale to a newly formed paper corporation, financed by a newly formed finance company deriving its funds secretly from First City.

From all these facts Livett concludes, and alleges in his amended complaint, that the various parties defendant conspired, either from the very beginning or at some point along the way up to the time of foreclosure, to cause a default in the Bank note, to have a fictitious or sham foreclosure, and thereafter to deal with the property for their profit without paying Livett's fee.

## The Issue

The statute of limitations for fraud, contained in Code of Civil Procedure section 338, subdivision 4, is a three-year period. Any cause of action maturing prior to June 22, 1976, is therefore barred. **(1)** Where a civil conspiracy is established the period of the statute does not commence until the last "overt act" pursuant to the conspiracy has been completed. (*Wyatt* v. *Union Mortgage Co.* (1979) 24 Cal.3d 773 [157 Cal.Rptr. 392, 598 P.2d 45].) In order to sustain the summary judgments rendered herein we must find that no substantial issue of fact exists undermining the conclusion that the conspiracy was completed prior to June 22, 1976, in that all "overt acts" pursuant to the conspiracy took place before that time.[1]

Appellant in tabular form sets forth in his brief the significant events alleged to have transpired during the conspiracy, commencing with the execution of a revised purchase agreement between Bank and First City on September 4, 1975, and culminating with the transmittal of documents relating to the ultimate sale from Bank to First City in February of 1977. Significant acts during the period include modifications of the purchase agreement at various times during 1976; execution by Bank of various documents at the behest of First City in the second half of 1976; and most importantly the transfer of the realty by the Bank, at First City's instructions, to Lexington Properties on December 27, 1976. Plaintiff contends that these various transactions, and particularly the grant in December of 1976, constitute "overt acts" in pursuance of the conspiracy, preventing the commencement of the running of the statute of limitations until around the first of 1977—well within three years of the date of the filing of the amendment to the complaint joining these defendants.

---

[1]As stated in *Corwin* v. *Los Angeles Newspaper Service Bureau, Inc.* (1971) 4 Cal. 3d 842, 851-852 [94 Cal.Rptr. 785, 484 P.2d 953]: "'The matter to be determined by the trial court in considering such a motion [for summary judgment] is whether the defendant (or the plaintiff) has presented any facts which give rise to a triable issue. The court may not pass upon the issue itself. Summary judgment is proper only if the affidavits in support of the moving party would be sufficient to sustain a judgment in his favor and his opponent does not by affidavit show such facts as may be deemed by the judge hearing the motion sufficient to present a triable issue. The aim of the procedure is to discover, through the media of affidavits, whether the parties possess evidence requiring the weighing procedures of a trial. In examining the sufficiency of affidavits filed in connection with the motion, the affidavits of the moving party are strictly construed and those of his opponent liberally construed, and doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion.'" (Fn. omitted.)

Defendants acknowledge the existence of the facts contained in plaintiff's tabulation, but take a different view of their significance. Agreeing that the statutory period does not commence running until the last "overt act" of the conspiracy, they take the position that the object of the conspiracy was achieved when Livett's status as consultant was terminated, early in 1975, or at the latest when the Bank purchased the realty at foreclosure sale, in September of 1975. Subsequent communications or transactions by parties thereafter interested in the realty were not a part of the conspiracy and do not constitute "overt acts." The difference in the parties' positions, therefore, is not one of dispute as to the factual history of the case, but is as to the significance of that history in terms of the definition of an "overt act" as defined in conspiracy law.

The leading case on this subject in California is *People* v. *Zamora* (1976) 18 Cal.3d 538 [134 Cal.Rptr. 784, 557 P.2d 75]. While this case dealt with a criminal conspiracy, its conclusions are applicable as well to a civil conspiracy. (See *Wyatt* v. *Union Mortgage Co., supra*, 24 Cal.3d at p. 787: "The differences between civil and criminal conspiracies ... are somewhat beside the point" in applying the statute of limitations.) The court in *Zamora* distinguished between activities of conspirators after perpetration of the principal object of the conspiracy which may *evidence* the prior conspiracy and hence be admissible at time of trial, from acts which are properly classifiable as "overt acts" in furtherance of the conspiracy. The court required an identification of the "substantive offense which is the primary object of the conspiracy." (*Id.*, at p. 560.) Once this offense has been completed, the statute of limitations on the conspiracy commences running, and subsequent conduct related to the conspiracy, such as flight or concealment, does not constitute "overt acts" sufficient to recommence the statutory period. In *Zamora* the court was faced with a conspiracy to burn realty with the intent to defraud the insurer. It concluded that the primary object of the conspiracy was the arson. Once this crime was completed the conspiracy was over, and neither subsequent receipt of the insurance proceeds nor covert hospitalization of an injured coconspirator were deemed "overt acts."

The ruling in *de Vries* v. *Brumback* (1960) 53 Cal.2d 643 [2 Cal. Rptr. 764, 349 P.2d 532], might initially appear contrary to *Zamora* in that the court found that the act of dividing up the loot following a burglary was an "overt act" taken pursuant to the conspiracy. It is noted, however, that the question in *de Vries* was the use of an "overt act" to link a lately joined conspirator to the earlier criminal conduct of his

partners—it had nothing to do with determining the time of commission of the crime for purposes of the statute of limitations. Indeed, the splitting of the spoils in *de Vries* took place on the same day, and within a few hours of, the burglary. In this context, the nexus of the immediately postcrime activities with the act specifically constituting the crime is apparent and understandable—the man driving the getaway car is certainly a member of the conspiracy.

More instructive for our purposes is *People* v. *Williams* (1979) 97 Cal.App.3d 382 [158 Cal.Rptr. 778]. The conspiracy in that case was the theft of an insurance investigation file and the surreptitious use thereafter in negotiation of a large insurance settlement. The overt acts which were in question were negotiations among the conspirators after settlement of the case concerning payment of proceeds and disposition of the purloined file. The issue on appeal was whether the trial court had correctly sustained demurrers to four of the counts of a criminal information, which were based upon the late overt acts. The court ruled that it could not decide the question as a matter of law, and hence reversed the trial court's holding on the demurrers. While recognizing and following the rule of *Zamora*, the court concluded that the conspiracy alleged was not only the theft of the insurance file, but also its purposeful concealment for a period of time thereafter. It deemed these facts to have been sufficiently pleaded to require the admission of evidence on the subject—the question of fact being the scope and nature of the "principal object" of the conspiracy.

We rule that the ratio decidendi of *Williams* has more application to the instant case than that in *Zamora*. The thrust of plaintiff's case, giving it all permissible favorable inferences as must be done on summary judgment motion, is that the several defendants conspired to destroy Livett's contractual beneficial expectancies not only by terminating his contract, but by a series of other clandestine actions designed to mislead Livett as to the bases and motivations for the termination. Accepting plaintiff's theory of the case (which is supported by sufficient evidence to warrant submission to the trier of fact) the secret agreement between Bank and First City was an integral part of the fraud by which the Sawyers' and Livett's interests in the realty were destroyed. The purpose of the conspiracy was to prevent those formerly interested in the realty from knowing that the purchasing group (Associates and First City) continued as practical owners of the realty even after the foreclosure sale, so that the ultimate disposition of the realty for the benefit of this group would not be questioned by those former owners. On this

theory, the continued transaction of various items of business relating to the realty by Bank as titleholder for the benefit of First City were all "overt acts," as were the creation and indirect financing of the ultimate purchaser, Lexington. If the conspiracy be deemed not only a plan to remove Livett from the property, but also to package and dispose of the property in a manner so as to avoid alerting Livett to the substance of the transaction, the conspiracy becomes a conspiracy to conceal.

In the terminology of *People* v. *Williams, supra,* 97 Cal.App.3d at page 391, we decline to resolve this issue as a matter of law. We believe that the nature and scope of the conspiracy in this case requires factual analysis, and that the record discloses substantial issues of fact which require resolution by trial. We are therefore forced to reverse the judgment as to all defendants parties to this appeal.

Having determined that reversal is required by reason of factual issues involving the statute of limitations, we are not called upon to rule on the appellant's alternative ground of appeal—that the statutory period should be extended because of his reasonable failure to discover facts leading to his knowledge of the conspiracy.

Appellant's final contention on appeal has to do with certain discovery rulings made by the trial court not only in this case but also in the case consolidated for hearing, *Sawyer* v. *First City Financial Corp.* (1981) *ante,* page 390 [177 Cal.Rptr. 398]. We affirm the trial court's rulings on the grounds stated in our concurrent opinion in the *Sawyer* case, *supra, ante.* Appellant (Richard K. Livett) to recover costs on appeal.

Staniforth, Acting P. J., and Wiener, J., concurred.

A petition for a rehearing was denied October 26, 1981, and on November 6, 1981, the judgment was modified to read as printed above. The petitions of respondents Toronto Dominion Bank, Klugherz, McIntosh, Cytrynbaum and Ostrow for a hearing by the Supreme Court were denied December 16, 1981. Richardson, J., was of the opinion that the petitions should be granted.