[No. A042122. First Dist., Div. Two. July 18, 1990.]

CAROL AAROE et al., Plaintiffs and Appellants, v.
FIRST AMERICAN TITLE INSURANCE COMPANY, Defendant
and Respondent.

COUNSEL

Christopher R. Haran and Daniel F. McHugh for Plaintiffs and Appellants.

Levinson & Lieberman, Lawrence R. Lieberman and Patricia M. Snyder for Defendant and Respondent.

OPINION

PETERSON, J.—Appellants challenge a trial court order granting a nonsuit on statute of limitations grounds, and thus barring their claims for an alleged civil conspiracy to defraud. We agree with appellants that their claims survived under the provisions of Code of Civil Procedure section 338, subdivision (d) (section 338(d)); and that the order of nonsuit was, therefore, erroneously granted. We reverse and remand.

I. FACTS AND PROCEDURAL HISTORY

Although the only issue in this appeal is a legal one concerning the proper application of the relevant statute of limitations, we briefly summarize the facts and procedural history of this litigation for background purposes. Since this appeal proceeds from a judgment of nonsuit, we analyze the evidence in the light most favorable to appellants.

During 1980 and 1981, appellants were among the hundreds who invested money in a trust deed investment program run by Commercial Western Finance Corporation (CWF). It was represented in newspaper ads and otherwise that CWF would place appellants' money into loans secured by deeds of trust on real property, and pay high interest rates on the money. In fact, CWF was simply a pyramid scheme, and appellants' money was taken by the principals of CWF for their own purposes. In 1981, CWF filed for

bankruptcy, and it is not a party to this litigation. CWF's principals have since been convicted of criminal charges in connection with this scheme.

As part of the scheme, CWF used appellants' money to make supposed loans, allegedly secured by deeds of trust, to entities which were not in fact third parties, but were simply controlled by CWF. The title insurance or escrow statements supporting 30 to 40 of these purportedly self-dealing deeds of trust were prepared by respondent First American Title Insurance Company (FA).

Appellants alleged that CWF and FA conspired to defraud appellants of their money, and that appellants did not learn of FA's participation in the conspiracy until July 1984. As to FA, appellants alleged that a FA managing agent and branch manager facilitated the CWF scheme, despite knowledge of the unsavory and fraudulent past business history of the CWF principal he dealt with in providing title insurance and escrow services to CWF.

The complaint herein was filed in November 1984, about four months after the alleged July 1984 discovery of FA's involvement in the fraud. The only legal question thus presented is whether the claim of a civil conspiracy to defraud was timely filed against FA. The trial court granted a motion for nonsuit against the claims of appellants, who were described in the trial court as the "noninsureds" because their particular CWF transactions were not handled by FA, but by other title insurers. The trial court recognized this suit was filed within three years of the alleged discovery of the fraud, as required by section 338(d). However, the trial court ruled appellants could not have the benefit of that statute of limitations because the last overt act, pursuant to the alleged conspiracy to defraud, occurred in September 1981 when CWF went into bankruptcy, and the last overt act, therefore, occurred more than three years prior to the filing of suit. Appellants timely appealed from the judgment of nonsuit. After the claims of the other FA-insured plaintiffs ended in a mistrial, their claims were retried and they recovered; those claims are not the subject of this appeal.

## II.  DISCUSSION

The narrow legal issue presented here concerns the statute of limitations for a conspiracy to defraud. Appellants rely upon the language of section 338(d), which sets a three-year limitations period and states in pertinent part: "The cause of action in that case [of an alleged fraud or mistake] is not to be deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud or mistake."

Respondent argues that this statute must be modified and shortened as to a conspiracy to defraud, by the last overt act doctrine as enunciated in *Wyatt v. Union Mortgage Co.* (1979) 24 Cal.3d 773 [157 Cal.Rptr. 392, 598 P.2d 45], in which the Supreme Court employed the last overt act doctrine to *lengthen* the applicable statute of limitations. We must reject respondent's argument.

■ The last overt act doctrine prevents the statute of limitations from beginning to run in certain cases, *"even after the fraud is discovered . . .,"* until the commission of the last overt act pursuant to the conspiracy. (*Id.*, at p. 788, italics in original; accord, *Agnew v. Parks* (1959) 172 Cal.App.2d 756, 766 [343 P.2d 118].) However, the *Wyatt* court also recognized that the statute of limitations for a conspiracy to defraud is otherwise governed by section 338(d). (24 Cal.3d at p. 786 and fn. 2.) In cases in which it is alleged the fraud was *not* discovered until less than three years prior to the filing of suit, section 338(d) directs the action may be timely despite the fact that the last overt act is more than three years old. Any other rule would simply repeal the three-year discovery rule of section 338(d), which is applicable in fraud and conspiracy to defraud cases, and replace it with a straight three-year statute measured from the last fraudulent act.

Thus, the last overt act doctrine as enunciated in *Wyatt* acts to toll the beginning of the applicable three-year limitations period, in the same way that section 338(d) tolls the beginning of the three-year period based upon delayed discovery. Although one tolling doctrine, last overt act, might not apply to save the action here, another tolling doctrine, delayed discovery, can also apply. In fact, both the statute and *Wyatt, supra,* provide that the delayed discovery rule continues to exist; a plaintiff must allege *either* rule applies, "that at least some act pursuant to the conspiracy was still being performed (*or was only discovered*) within the applicable statute of limitations time period." (24 Cal.3d at p. 788, italics added; accord, *Livett v. F. C. Financial Associates* (1981) 124 Cal.App.3d 413, 421 [177 Cal.Rptr. 411] [reversing summary judgment in a conspiracy to defraud case under last overt act doctrine, and recognizing the action could also be timely because of "reasonable failure to discover facts . . . ."]; *Gutierrez v. Mofid* (1985) 39 Cal.3d 892, 897 [218 Cal.Rptr. 313, 705 P.2d 886] ["[T]he uniform California rule is that a limitations period dependent on discovery of the cause of action begins to run no later than the time the plaintiff learns, or should have learned, the *facts* essential to his claim." Italics in original.].)

■ Appellants here relied upon delayed discovery under section 338(d), not the last overt act doctrine. They alleged facts in their complaint

supporting a tolling of the limitations period due to their delayed discovery. These allegations established the timeliness of their action under section 338(d). The fact they did not additionally allege tolling under the last overt act doctrine is irrelevant; that omission cannot defeat the delayed discovery tolling which section 338(d) allows. Consequently, respondent's argument here, that the last overt act doctrine would not save appellants' complaint, is a non sequitur; respondent was not entitled to nonsuit on that basis. Since the last overt act doctrine was the sole basis upon which nonsuit was granted, and since the evidence at trial did not negate appellants' claims to tolling under the delayed discovery rule, we must reverse the judgment and remand for further proceedings.[1]

At the time of oral argument, respondent perhaps realized it was on shaky ground; so it shifted to a new argument. ■ It urged us to uphold the trial court's ruling based not upon the last overt act doctrine, but upon respondent's claim that, even if the discovery rule did apply here, the bankruptcy of CWF in 1981 as a matter of law required appellants to discover the alleged fraud of FA. This latest argument, however, is also unconvincing. At the time of the bankruptcy and thereafter, appellants were reassured by direct communications and by court filings that CWF had assets which exceeded its liabilities, and merely faced a short-term problem of cash flow. Not every bankruptcy necessarily results from or implies fraud; and neither we nor the trial court could rule as a matter of law that a bankruptcy proceeding, in which appellants were reassured they would receive their money, would ineluctably trigger a duty on the part of unsophisticated investors to somehow discover a fraud not apparent to the rest of the world.

We sympathize with respondent's laudable attempt to ferret out some legitimate basis for the trial court's ruling. Indulging all inferences in favor of appellants, however, as we must on this appeal from a judgment of nonsuit, and noting that the trial court refused to allow appellants to testify—and indeed failed to provide any intelligible explanation for its ruling, we can find none.[2]

---

[1] We note that *Wyatt, supra,* has even received cogent criticism for its apparent adoption of a rule which would in effect repeal any effective statute of limitations for a conspiracy to defraud. (See, e.g., 3 Witkin, Cal. Procedure (3d ed. 1985) Actions, § 402, pp. 430-433 [noting "strong" criticism of the *Wyatt* rule].)

[2] When appellants protested that the trial court had not heard relevant evidence which would be required in order to determine whether appellants were barred by the statute of limitations, the trial court candidly responded: "That's true—how would I know."

## III.  DISPOSITION

The judgment is reversed, and the case is remanded to the trial court for further proceedings consistent with the views expressed herein.

Kline, P. J., and Smith, J., concurred.