RECOMMENDED FOR PUBLICATION
File Name: 25b0002p.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

IN RE: JOHN PRESTON THOMPSON,

        *Debtor*.

_____

TEENA COLEBROOK,

        *Plaintiff-Appellant*,

     *v*.

JOHN PRESTON THOMPSON,

        *Debtor-Appellee*.

No. 24-8011

On Appeal from the United States Bankruptcy Court
for the Middle District of Tennessee at Nashville.
Nos. 23-bk-04259; 24-ap-90025—Randal S. Mashburn, Bankruptcy Judge.

Decided and Filed:  April 17, 2025

Before: BAUKNIGHT, CROOM, and GREGG, Bankruptcy Appellate Panel Judges.

_____

**COUNSEL**

**ON BRIEF:**  Griffin S. Dunham, DUNHAM HILDERBRAND PAYNE WALDRON, PLLC, Brentwood, Tennessee, for Appellee.  Teena Colebrook, San Luis Obispo, California, pro se.

     CROOM, J., delivered the opinion of the court in which BAUKNIGHT, J., joined in full, and GREGG, J., joined in the result.  GREGG, J. (pp. 38–41), delivered a separate concurring opinion.

---

**OPINION**

---

JIMMY L. CROOM, Bankruptcy Appellate Panel Judge. At issue in this appeal is whether the bankruptcy court erred in dismissing the appellant's adversary complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim against the debtor. The bankruptcy court was tasked with sua sponte reviewing the sufficiency of the appellant's complaint by virtue of her application to proceed in forma pauperis. After analyzing the appellant's adversary complaint, the bankruptcy court concluded that it did not adequately state a claim for relief against the debtor because her claims were time-barred under the relevant statutes of limitations. As such, the court dismissed her complaint under the mandate of 28 U.S.C. § 1915(e)(2)(B).

For reasons that will be set forth herein, the appellant is not entitled to relief in this appeal. The bankruptcy court did not err in sua sponte dismissing her adversary complaint. Her claims were time-barred by various statutes of limitations and, as such, dismissal under 28 U.S.C. § 1915 was mandated. The errors appellant alleges the bankruptcy court made in this matter stem from a misunderstanding of the law and of legal procedure—not an error by the bankruptcy court.

### ISSUES ON APPEAL

The Appellant alleges the following issues in this appeal:

1. The bankruptcy court erred in dismissing the adversary complaint without giving her notice and an opportunity to be heard;

2. The bankruptcy court erred in dismissing her adversary complaint without giving her an opportunity to amend her complaint pursuant to Federal Rule of Civil Procedure 15;

3. The bankruptcy court erred in dismissing her adversary complaint for failure to state a claim against the debtor; and

4. The bankruptcy court was biased against Appellant based on her pro se status.

(Notice of Appeal at 2-3, Adv. Proc. No. 3:24-ap-90025 ECF No. 13). The Appellant also asserts that the bankruptcy court erred in concluding that the debt owed to Appellant was not

excepted from discharge pursuant to 11 U.S.C. § 523 and that the debtor was not prohibited from receiving a discharge under 11 U.S.C. § 727; however, the bankruptcy court dismissed the complaint without making either determination. As such, those issues are not properly before the panel.

## JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal. The United States District Court for Middle District of Tennessee has authorized appeals to the Panel, and no party has timely elected to have this appeal heard by the district court. 28 U.S.C. § 158(b)(6), (c)(1). A final order of the bankruptcy court may be appealed as of right pursuant to 28 U.S.C. § 158(a)(1). "Orders in bankruptcy cases qualify as 'final' when they definitively dispose of discrete disputes within the overarching bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC,* 589 U.S. 35, 37, 140 S. Ct. 582, 586 (2020) (citing *Bullard v. Blue Hills Bank*, 575 U.S. 496, 501, 135 S. Ct. 1686, 1692 (2015)). An order that dismisses an action pursuant to 28 U.S.C. § 1915(e) for failure to state a claim is a final order. *Hill v. Lappin*, 630 F.3d 468, 470 (6th Cir. 2010) (treating the order as final without explicitly so stating).

An order sua sponte dismissing a complaint pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is reviewed de novo. *Id.*; *see also Miley v. Thornburg Mortg. Home Loans, Inc.*, 613 F. App'x 915, 916 (11th Cir. 2015) (applying the de novo standard of review to a dismissal pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) in the bankruptcy context). Under a de novo standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders* (*In re Morgeson*), 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007) (citation omitted).

Ordinarily, the determination of whether a plaintiff should be permitted to amend her complaint under 28 U.S.C. § 1915 is reviewed for an abuse of discretion. *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). "An abuse of discretion occurs only when the trial court relies upon clearly erroneous findings of fact or when it improperly applies the law or uses an erroneous legal standard. The question is not how the reviewing court would have ruled, but rather whether a reasonable person could agree with the bankruptcy court's decision; if

reasonable persons could differ as to the issue, then there is no abuse of discretion." *In re Murray Energy Holdings Co.*, 640 B.R. 558, 561 (B.A.P. 6th Cir. 2022) (cleaned up). When, however, "a district court denies a motion to amend because it concludes that the amendment would be futile," such denial is reviewed de novo. *Williams v. City of Cleveland*, 771 F.3d 945, 949 (6th Cir. 2014) (citation omitted).

## FACTS

In 2012, appellant Teena Colebrook, ("Appellant"), a California resident, entered into two separate contracts ("Investor Financing Agreement(s)") with a Tennessee corporation, John Forbes, Inc. dba SevenX Investments Corporation ("Corporation"), wherein she agreed to invest a total of $35,000 in two separate real estate projects. In return for Appellant's investments, she "acquir[ed] the right to share in the profit for the sale" of two parcels of real property in the Nashville, Tennessee area. (Adv. Proc. Compl. Ex. A at 7, 11, Adv. Proc. No. 3:24-ap-90025 ECF No. 1.) The contracts are dated July 6, 2012, and September 8, 2012. Neither contract specified a timeline for the purchase or sale of the listed properties.

The debtor, John Preston Thompson ("Debtor"), was not listed as a party to the contracts. Neither his name nor his signature appears on either agreement. Nowhere in either contract did the Corporation identify its members.

Exhibit B to Appellant's adversary complaint consists of several pages of email excerpts between Appellant and several individuals. (*See* Adv. Proc. Compl. Ex. B at 14-23, Adv. Proc No. 3:24-ap-90025 ECF No. 1.) As the bankruptcy court recognized in its opinion, it appears that Appellant cut and pasted these excerpts to assemble the exhibit. Appellant titled the document "Emails from Warren Forbes, Steve Huffman, John Preston Thomas of SevenX Investments dba John Forbes Inc."[1] (*Id*. at 15.) The emails span from July 6, 2012, through September 16, 2021.

According to the headings in Exhibit B, the emails included in the exhibit came exclusively from four email accounts: (1) stevemitm@gmail.com, which appears to be

---

[1]In titling this document, Appellant misspelled Debtor's name and flipped the Corporation's name. The Corporation is listed in the contracts as "John Forbes, Inc. dba SevenX Investments."

Steve Huffman ("Huffman") (2) johnforbesllc@gmail.com, which appears to be Warren Forbes ("Forbes"), (3) warrenforbes@aol.com, which also appears to be Forbes, and (4) tc4gold@gmail.com, which is Appellant. The exhibit does not include any emails from Debtor.

The emails from stevemitm@gmail.com typically do not contain a signature block or electronic signature. The emails from "johnforbesllc@gmail.com" contain a signature block with the following information: "JohnForbes, Inc. dba SevenX Investments" (or simply "SevenX Investments") with the typed names "Warren Forbes, Steve Huffman, and John Preston Thompson"[2] listed thereunder along with their phone numbers. One of the emails from this account is also signed "Thank you, Warren, Steve and Preston." The emails from warrenforbes@aol.com contain a similar signature block: "7X Investments" or "SevenX Investments" with the typed names "Warren Forbes, Steve Huffman, and John Preston Thompson"[3] listed thereunder along with their phone numbers.

The first email exchange included in Appellant's exhibit is between Huffman and Appellant. It is dated the same day the first Investor Financing Agreement was executed – July 6, 2012. Huffman stated in his email:

> We are very careful on any house that we take on to nullify the mortgage, so we don't expect for it not to work. I will tell you that we have never told a investor that if it don't work you will get your money back but in your case if for what ever reason, something goes wrong on the investment I will honor you investment and put your money on another house.[4]

(*Id.* at 15.) Appellant responded to Huffman "Ok, thank you I really appreciate that, I have trusted so many and lost so much because of it that I am having to be extra careful." (*Id.*)

---

[2]Sometimes the Debtor's name is listed as just "Preston Thompson" on these lines.

[3]*Id.*

[4]All emails are reprinted verbatim from Appellant's exhibit. Any misspellings or grammatical errors are those of the email author. Although some of the reprinted emails had been highlighted and/or contained bold text, the enhancements appear to have been added by Appellant when she assembled the exhibit. As such, and for ease of reading, the panel has removed these features in reprinting the emails.

On February 20, 2013, Forbes sent Appellant the following email:

We do have several other cases currently underway in federal court, which are reward is more of a long shot with new cases. This is why we've shifted focus just a bit to completing more short sales. . . . .

. . . To be frank, our only other option would be bankruptcy and we're just not going to do that. That's a totally unacceptable action to us and we absolutely will make things right with you. We can't tell you exactly how long that will take, but it will happen.

(*Id.* at 16.) Appellant responded to this email the same day stating:

I appreciate you saying you will make it right after me putting all my faith and my life savings in, losing it would not be good for you or me. However, we do have a timeline to get something into the IRA so at the very least you will need to make a payment to the IRA by July even if it isn't a full payment so the goal is to get at least $20k in there by July.

(*Id.*)

The payment to the IRA was apparently never made because on April 9, 2013, Appellant sent an email stating "I still have not received any money or information on when a payment will be forthcoming. Can you please update me." (*Id.* at 17.) That same day, Forbes sent her an email stating that "we still expect to have a payment to you this month." (*Id.*) On May 23, 2013, Appellant received an email from the johnforbesllc@gmail.com account that said:

We already have a Cashier's Check made out to you. You could endorse it, then forward on to the IRA?

It's only $500, but we wanted to show good faith and get started with repayment on a regular schedule. We expect to increase the amount each month as our cash flow here increases.

(*Id.* at 18.)

Despite the promises of a regular repayment schedule, the payments eventually became sporadic. On November 19, 2013, Appellant sent the following email:

Guys

I haven't had a payment since September, this is not acceptable, we had a guarantee that I would be paid back and you are not following through or communicating with me. This is a BIG PROBLEM to me. You have two months

of payments to catch up by the end of this month, please advise ASAP, I have been extremely patient but missing two month of payments is not acceptable.

If I do not hear from you by Thursday, I will have to assume you have decided to renege on your contract and word.

(*Id.* at 19.)  Huffman sent Appellant an email on January 15, 2014, asking her to not "lose faith in us just yet." (*Id.*)  He sent another email on April 4, 2014, stating "I will make sure they put money in your account within the next week.  Sorry for the hassle." (*Id.*)  Appellant sent him an email that same day that asked "[w]here is the payment that you promised?" (*Id.* at 20.)

On April 9, 2014, Appellant sent the following email:

Steve,

Still no payment.  This is really getting beyond a joke all I get is false promises of payments.  You need to just tell him straight that you have no intention of ever paying me back for the life savings I trusted and invested with you because of the guarantee.  It is clear to me that you have no intention of payment me as I have given you every opportunity of paying a small regular amount each month so until it is paid but you fail to do that and just promise a payment will be made and it never is.

I expect a payment of $500 put in the account by Monday as you have missed many months of payments now and each month thereafter $300.

if this isn't done then I will know for sure that you and your company have no intention of honoring your guarantee.

(*Id.*)  Huffman replied on April 11, 2014, "As I've said before which I know you have no reason to believe me but I do have all intentions on paying you back." (*Id.*)

Throughout the remainder of 2014, Appellant continually sent emails asking about the payments.  On August 16, 2015, Appellant sent an email asking them to "make regular payments each and every month of a minimum of $300." (*Id.* at 21.)  She continued:

IT is very frustrating to have put my trust in you and have the "guarantee of payment with interest" and to have to constantly keep asking for payment promised yet be given crumbs. . . . THe only reason I did the investment was because of the guarantee of full payment and this is not happening.

(*Id.*)

On September 10, 2015, Huffman sent an email stating:

Teena the August payment was not for September.  We will make a September payment this week.  We can not sign the modification, because the company does not exist any longer.  John Forbes went under well over a year ago, Preston and I don't even have contact with the other partners.[5]  Sorry for the poor payment history we will try to be more consistent.

(*Id.*)  Appellant responded that same day:

Steve, I will have to ask what they want to do, I can perhaps change the name of the company, it isn't a good sign that you have no contact with the others, It sure makes me wish I had never done anything with you all, it has been a financial disaster for me so far.

Are you able to make it right????????????

(*Id.*)  Huffman responded "Yes we are able to pay it.  The others have not paid anything so far anyway.  We will make a payment each month to you.  Sorry for the delay." (*Id.* at 22.)

Despite Huffman's reassurances, Appellant had to continually ask about the status of her payments over the next six years.  The penultimate email in the exhibit is one Appellant sent to Debtor on September 16, 2021.  The email reads:  "[Huffman] told me that you would be sending a payment this was in early August[6] yet I have not heard anything since.  please explain as they are now nearly two years behind." (*Id.* at 23.)  Debtor did not respond to this email, or if he did, his response is not included in the exhibit.

The properties in which Appellant had invested are never mentioned in any of the emails.  Instead, the senders reference call centers being set up and merchant accounts being established as excuses for the delay in payment.  It is never made clear what either of these have to do with Appellant's investments.

---

[5]According to the Tennessee Secretary of State's business records, the Corporation was administratively dissolved on August 8, 2015.

[6]The last email in the exhibit is from Huffman to Appellant, dated "Mon. Aug 2, 7:33 AM" and says, "I sent this to Preston. He is the one that is going to send you something.  His email is preston@musiccityventures.net" (*Id.*)  Presumably, Appellant sent the September 16, 2021 email to Debtor based on the August 2 email from Huffman.

Debtor filed a no-asset chapter 7 petition for bankruptcy relief on November 17, 2023. He listed Appellant as an unsecured non-priority creditor on schedule E/F with a "Business debt" of an unknown amount. (Petition at 33, Bankr. No. 3:23-bk-04259 ECF No. 1.)

Appellant filed an unsecured proof of claim in Debtor's case on February 15, 2024, in the amount of $45,000.00. (Bankr. No. 3:23-bk-04259, POC No. 8-1). She listed the basis of the claim as "Guaranteed business contract." Appellant did not attach any documentation to her proof of claim.

Appellant filed a pro se dischargeability complaint ("Complaint") against Debtor on February 20, 2024. (Adv. Proc. No. 3:24-ap-90025.) She named Huffman, Forbes, and "John Does 1-10"[7] as co-defendants (collectively "Co-Defendants"). She did not name the Corporation as a defendant.

Pursuant to the Complaint, Appellant asserted that the adversary proceeding was "an action to object to entry of discharge in the chapter 7 bankruptcy case of" Debtor and that Debtor was "not eligible for discharge . . . pursuant to 11 U.S.C 523 (a) (2) (a) (b) and 4 (6) and any other the court sees fit." (Adv. Proc. Compl. at 1, Adv. Proc. No. 3:24-ap-90025 ECF No. 1.)

In setting forth her claims against Debtor and the Co-Defendants, Appellant alleged that "Debtor intended to hinder, delay and defraud [Appellant] and transferred, permitted to be transferred or concealed where [Appellant's] investments went and misused the money Plaintiff invested into two properties." (*Id.* at 3.) She also alleged that (1) "[D]ebtor and his coconspirators intentionally concealed, mutilated, falsified or failed to keep or preserve any recorded information, including books and documents records and papers from which the debtors' businesses transactions in this adversary proceeding might be ascertained," and (2) "Debtor and his coconspirators fraudulently caused willful and malicious injury to [Appellant] by intentionally making false misrepresentation[s]" about their ability to sell the properties in which she had invested. (*Id.*) She also alleged that "Defendant knowingly and willingly utilized intentionally false and deceptive tactics to induce [Appellant] to invest in

---

[7]Appellant never identified the defendants listed as "John Does 1–10" in the caption of the Complaint. Although she made allegations about Debtor "and his coconspirators," she never identified any other actors besides Debtor, Huffman, and Forbes.

his/their scheme and instead used the money for his/their own personal use or to further other fraudulent schemes" and that Debtor and Co-Defendants obtained Appellant's investment through "false pretenses, a false representation, or actual fraud," and through "[u]se of a statement in writing that was materially false." (*Id.* at 3, 5.)

Appellant asserted that Debtor and the Co-Defendants used the money she invested with them, along with money from unnamed others, to fund lavish lifestyles and start other businesses. "This appears to be a classic example of a Ponzi scheme but instead of using new investors money to pay off older investors, he and his coconspirators used it for their own benefit leaving all creditors high and dry." (*Id.* at 5.) Appellant asserted that this fraudulent behavior continued until 2021 when "Debtor with intent to deceive continually and regularly . . . told Plaintiff that he and his coconspirators would repay what was owed." (*Id*. at 4.)

Aside from characterizing the Co-Defendants as having misrepresented their intention to repay her investment, Appellant did not allege with any specificity what the parties said in inducing her to invest with them. She did not include any information in the Complaint about her relationship with Debtor, the Co-Defendants, and/or the Corporation prior to execution of the Investor Financing Agreements. She did not detail who she spoke to prior to making her decision to invest money with the Corporation, nor did she state who she worked with in executing the Investor Financing Agreements. As it relates to specific allegations about Debtor's actions, Appellant attributed everything said in the emails from Forbes and Huffman to Debtor apparently based on the fact his typed name appeared in the email signature blocks. She also considered the email signatures as proof Debtor was affiliated with the Corporation (*See* Reply Br. at 3, BAP Case No. 24-8011 ECF No. 17-1) ("However, on every email that was sent to Appellant it lists [Debtor's] name along with the other co conspirators" in the email signature.).[8] Appellant never acknowledged the fact that the debt at issue arose from transactions with the Corporation and not with Debtor personally. She also never raised any theories of corporate veil piercing.

_____

[8]In her Reply Brief, Appellant also asserts that Debtor admitted he was a member of the Corporation when he listed the debt owed to her on his chapter 7 petition. (Reply Br. at 3.)

On page 5 of the Complaint, Appellant stated that "Discovery will enable [her] to further prove her case against Defendant." (Adv. Proc. Compl. at 5, Adv. Proc. No. 3:24-ap-90025 ECF No. 1.) In her prayer for relief, Appellant requested a finding of nondischargeability as well as monetary damages. Appellant did not state a specific amount but requested "injunctive relief, statutory penalties and damages, . . . compensatory and punitive damages in an amount to be determined by a jury, prejudgment and post-judgment interest, costs and whatever further relief the Court deems appropriate including denial of discharge." (*Id.* at 6.) Appellant attached copies of the contracts and email exchanges between the parties, as summarized *supra*, as exhibits to the Complaint.

In the closing paragraphs of the Complaint, Appellant stated that her investment with the Corporation left her indigent and, as such, she was at an unfair disadvantage by having to represent herself in the proceeding. (*Id.* at 5.) Appellant filed an application to proceed in the adversary in forma pauperis ("IFP Application") on March 5, 2024.

On March 18, 2024, the bankruptcy court issued an order staying the adversary proceeding while it reviewed the IFP Application.

On April 9, 2024, the chapter 7 Trustee issued her no asset report.

On April 29, 2024, the bankruptcy court issued a memorandum opinion and separate order which granted Appellant's IFP Application but dismissed the Complaint for failure to state a claim. (Mem. Op., Adv. Proc. No. 3:24-ap-90025 ECF No. 8 (hereinafter "Opinion"); Order, Adv. Proc. No. 3:24-ap-90025 ECF No. 9).

In addressing Appellant's IFP Application, the bankruptcy court recognized that 28 U.S.C. § 1930(f)(1) and (2) only allow a court to waive the case filing fee and other fees set by the Judicial Conference for qualifying chapter 7 debtors. Although § 1930(f)(3) provides that "[t]his subsection *does not restrict* the district court or the bankruptcy court from waiving, in accordance with Judicial Conference policy, fees prescribed under this section for other debtors and creditors," the bankruptcy court found that the Judicial Conference had not issued a policy

on the waiver of adversary proceeding filing fees for creditors such as Appellant.**9**  (Op. at 2.) Thus, the court stated that it could "consider other sources of authority." (*Id.* (citation omitted).)

The source the bankruptcy court relied on in granting Appellant's IFP Application was 28 U.S.C. § 1915.  This section provides that "any court of the United States may authorize the commencement, prosecution or defense of any suit, action or proceeding, civil or criminal, or appeal therein, without prepayment of fees or security therefor[.]"  28 U.S.C. § 1915(a).  The bankruptcy court analyzed Appellant's indigency affidavit and concluded she did not have the ability to prepay the fee "without undue hardship." (Op. at 5.)  Thus, the court allowed Appellant to file the Complaint in forma pauperis.

Unfortunately for Appellant, the conclusion regarding the filing fee did not end the court's inquiry.  "Because [Appellant] filed her complaint in forma pauperis, the same statute that allows her to do so mandates that the Court review the complaint and dismiss it if the Court determines that it 'fails to state a claim on which relief may be granted.'" (*Id.* (citing 28 U.S.C. § 1915(e)(2)(B)(ii)).)

Citing to *Hill v. Lapin*, 630 F.3d 468, 470-71 (6th Cir. 2010), the bankruptcy court reviewed the Complaint under the standards used in addressing motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).**10**  In setting forth the various Rule 12(b)(6) standards, the court recognized that although pro se complaints are held to less stringent standards than those drafted by attorneys, pro se plaintiffs are still required to meet "basic pleading requirements." (Op. at 7.)

> The complaint must still contain direct or inferential allegations respecting all the material elements to sustain a recovery under some viable cause of action.  The less stringent standard for pro se plaintiffs does not compel the courts to conjure up unpleaded facts to support conclusory allegations.

(*Id.* (cleaned up).)

---

**9**Judicial Conference policy waives the prepayment of adversary proceeding filing fees for chapter 7 debtors, chapter 11 and 12 dischargeability complaints filed by debtors, certain actions that benefit individual debtors, adversary proceedings initiated by the United States, and adversary proceedings initiated by child support creditors.  *See* Bankruptcy Fee Compendium III (June 1, 2014 Edition) at 60–63, available at https://jnet.ao.dcn /court-services/bankruptcy-clerks-offices/fees.

**10**Federal Rule of Civil Procedure 12(b)(6) will be referred to herein as "Rule 12(b)(6)."

The bankruptcy court began its review of Appellant's Complaint by determining what specific relief Appellant was seeking.  Because the only statute Appellant cited in the Complaint was 11 U.S.C. § 523, the court concluded she was seeking a nondischargeable judgment under 11 U.S.C. § 523(a)(2)(A), (a)(2)(B), (a)(4), and (a)(6).

The bankruptcy court stated that the first step in setting forth an adequate claim under § 523 is demonstrating that the creditor holds an enforceable obligation against the debtor under non-bankruptcy law.  If the creditor fails to do this, the bankruptcy court stated that the inquiry ends.  "In the absence of an enforceable obligation, there is no 'debt' that can be non-dischargeable."  (Op. at 12 (citing *Thompson v. Roland* (*In re Roland*), 294 B.R. 244, 249 (Bankr. S.D.N.Y. 2003)).)

In reviewing the Complaint, the bankruptcy court recognized that Appellant's contracts were with the Corporation, not Debtor, and that "[s]he seeks to hold him personally liable based on fraud or conspiracy to defraud."  (*Id.* at 13.)  The court further acknowledged that Appellant had "not previously obtained a judgment against [Debtor] for fraud or conspiracy, but instead she would need this Court to enter one as part of its nondischargeabilty determination."  (*Id.*)

The bankruptcy court then determined that the claims Appellant asserted against Debtor were barred by the applicable statutes of limitations and were unenforceable.  "To the extent [Appellant] adequately states a claim for fraud or conspiracy to defraud, which the court need not examine, her claims are now time-barred."  (*Id.*)  Thus, the bankruptcy court concluded Appellant did not have a debt that could be excepted from Debtor's discharge under 11 U.S.C. § 523(a)(2)(A), (a)(2)(B), (a)(4), or (a)(6).

In making this determination, the bankruptcy court first analyzed Appellant's fraud claim and concluded that the applicable statutes of limitations under both Tennessee and California law were three years from the date the plaintiff discovered, "or in the exercise of reasonable care and diligence, should have discovered," an "injury and its cause" or discovered "the facts constituting fraud."  (Op. at 15 (citations omitted).)  The court further held:

> [t]he discovery rule does not require full knowledge that fraud or conspiracy to defraud have occurred.  Instead, the discovery rule only requires some knowledge

that plaintiff has suffered an injury due to "wrongful" conduct to put her on notice of the need to investigate[.]

(*Id.* (citations omitted).) The bankruptcy court reviewed the emails attached to the Complaint and concluded that Appellant was aware of her injury due to potential fraud "as early as 2013" and "by August 2015 at the latest" when she discovered that the Corporation was not going to repay her investment. (*Id.* at 16.) Additionally, because Appellant had not pleaded or demonstrated that the statutes of limitations had been tolled, the court concluded Appellant's claims for fraud were time-barred and unenforceable. (*Id.*)

Turning to Appellant's conspiracy-to-defraud claims, the bankruptcy court concluded they were similarly time-barred. The court recognized that both Tennessee and California law apply the same three-year statutes of limitations for fraud claims to conspiracy-to-defraud claims. It also recognized that the limitations period for conspiracy-to-defraud claims begins to run from the "last overt act" done in furtherance of the conspiracy. Again, after reviewing the allegations in the Complaint and the attached emails, the bankruptcy court concluded that Appellant "was on notice of potential wrongdoing no later than August 2015." (*Id.* at 19.) Thus, the court held that Appellant's conspiracy-to-defraud claim against Debtor was time-barred and unenforceable.

Because Appellant's claims against Debtor were time-barred, the bankruptcy court concluded that the Complaint failed to adequately state a claim for relief against Debtor. As such, the court held it was required to dismiss her complaint against Debtor under 28 U.S.C. § 1915(e)(2)(B)(ii).[11]

Appellant filed her timely notice of appeal on May 13, 2024.[12]

To date, Debtor has not received a discharge.

---

[11]The bankruptcy court also dismissed Appellant's claims against the Co-Defendants without prejudice. That decision is not challenged on appeal.

[12]Following entry of the dismissal order, Appellant did not seek leave from the bankruptcy court to amend her complaint, nor did she file an amended complaint pursuant to Federal Rule of Bankruptcy Procedure 7015. She also did not seek relief from the order dismissing her complaint under Federal Rule of Bankruptcy Procedure 9023 or 9024.

## DISCUSSION

### I. Appellant's Request to Strike Appellee's Brief as Untimely

The Panel issued a briefing schedule in this appeal on July 9, 2024. It set a deadline of August 8, 2024, for Appellant's brief and September 10, 2024, for Debtor's brief. On August 8, 2024, Appellant filed a motion to extend the briefing schedule for thirty days, up to and including September 8, 2024. Appellant based her extension request on her pro se status. The Panel granted Appellant's request and reset the briefing schedule as follows: September 9, 2024, for Appellant's brief and October 9, 2024, for Debtor's brief. Appellant's reply brief was due fourteen days after Debtor filed his brief. Appellant timely filed her opening brief.

Debtor filed his appellate brief at 12:40 AM Eastern Standard Time on October 10, 2024. Because the brief was technically late, the Panel issued an order directing Debtor's counsel to submit a motion, no later than October 11, 2024, to file appellee's brief *instanter*. Debtor's counsel timely filed said motion ("*Instanter* Motion").

Pursuant to the *Instanter* Motion, Debtor's counsel stated that he is based in Nashville, Tennessee, which is in the Central Time Zone. He stated that he uploaded the appellee brief to the BAP filing system on October 9, 2024, at 11:40 PM Central Standard Time, which he thought was timely. Debtor's counsel asked the Panel for leave to accept Debtor's brief due to inadvertence and mistake. He also asserted that accepting the Debtor's brief would not prejudice Appellant. The Panel found the assertions well-founded and issued an order granting the *Instanter* Motion on October 15, 2024.

In her reply brief, filed four days late on October 28, 2024, Appellant asserted that the BAP order granting the *Instanter* Motion was prejudicial. Appellant asserted that (1) the BAP had not granted her such leniency when dismissing an unrelated appeal as untimely in BAP Case No. 24-8010; (2) the Panel erred in not giving her time to respond to the *Instanter* Motion; and (3) Debtor filed his brief late "as a tactical advantage to get the unlawful upperhand." (Reply Br. at 2, BAP Case No. 24-8011 ECF No. 17-1.) In the body of her reply brief, and without filing a formal motion, Appellant asked the Panel to strike Debtor's appellate brief.

Appellant's argument that she was denied leniency in BAP Case No. 24-8010 is wholly without merit.  In that appeal, Appellant was seeking relief from an April 19, 2024 order dismissing her dischargeability complaint against Huffman, ("Huffman Adversary").[13] Pursuant to Federal Rule of Bankruptcy Procedure 8002(a),[14] Appellant was required to file her notice of appeal by May 3, 2024.  Appellant did not file her notice of appeal until May 13, 2024.  The BAP issued a show cause order on May 28, 2024, directing Appellant to show cause why her appeal should not be dismissed for failure to timely file her notice of appeal.

Appellant filed a response to the show cause order on June 5, 2024, in which she claimed that dismissal of an appeal "on mere Technicalities" was abhorrent and a miscarriage of justice. (Resp. to Order to Show Cause at 1, BAP Case No. 24-8010 ECF No. 4.)  She also asserted that the order dismissing the Huffman Adversary was not entered until April 24, 2024, when the bankruptcy court issued notice of entry of the order, and that the BAP incorrectly calculated the time for filing an appeal by counting Saturdays and Sundays in violation of Federal Rule of Bankruptcy Procedure 9006.  (*Id.* at 2-3.)  The BAP found Appellant's arguments without merit.

As the BAP recognized in its opinion regarding the show cause order, although Bankruptcy Rule 8002's 14-day time limit is not jurisdictional, the Sixth Circuit considers the deadline set forth therein mandatory.  (Op. at 2, BAP Case No. 24-8010 ECF No. 5-2 (citing *Tennial v. REI Nation, LLC* (*In re Tennial*), 978 F.3d 1022, 1028 (6th Cir. 2020)).)  The BAP also recognized that a party's pro se status does not relieve her from complying with the deadline.  (*Id.* (citing *Kinney v. F. Scott Milligan & Anderson Lumber Co., Inc.* (*In re Kinney*), No. 3:21-CV-131-TAV-JEM, 2022 WL 806599, at *2 (E.D. Tenn. Mar. 15, 2022) (citations omitted)).)

After examining the docket in the Huffman Adversary, the BAP concluded that the dismissal order was entered on April 19, 2024, when the court issued the order dismissing the complaint.  The bankruptcy court sent notice of entry of the dismissal order that same day to

---

[13]Huffman filed a chapter 7 bankruptcy petition in the Middle District of Tennessee on September 7, 2023. On February 12, 2024, Appellant filed an adversary complaint against Huffman that was essentially identical to the complaint currently on appeal.

[14]The Federal Rules of Bankruptcy Procedure will be referred to herein as "Bankruptcy Rule."

Appellant via email (tc4gold@gmail.com -- the same email address provided by Appellant in the current appeal).  Because "no service of the order is necessary to start the running of the appeal period," the BAP concluded Appellant's argument regarding the entry date was baseless.  (Op. at 2-3, BAP Case No. 24-8010 ECF No. 5-2 (citing *Hoffman & Kuhn, Inc. v. Branham* (*In re Branham*), 953 F.2d 644 (6th Cir. 1992) (table)).)

As for Appellant's argument about Bankruptcy Rule 9006, the BAP found it equally unpersuasive.  Rule 9006 requires courts to count every day, including intermediate Saturdays, Sundays, and legal holidays, when calculating the time for filing a notice of appeal under Bankruptcy Rule 8002.  Fed. R. Bankr. P. 9006(a)(1), (3).  The only "exception" to this rule is if the last day of the appeals period falls on one of those days (a Saturday, Sunday, or legal holiday) or if the clerk's office is inaccessible on the last day of the time period.  *Id.*  In those situations, the time for filing a notice of appeal is extended to the next day that is not a Saturday, Sunday, or legal holiday, or to the first day the clerk's office is accessible.  *Id.*  The last day for filing a notice of appeal of the dismissal order in the Huffman Adversary was May 3, 2024.  That day was not a Saturday, Sunday, or legal holiday, and the bankruptcy court clerk's office was accessible on that day.  As such, the BAP concluded that the time for filing a notice of appeal expired on May 3, 2024.  (Op. at 2-3, BAP Case No. 24-8010 ECF No. 5-2.)

There was nothing incorrect about the dismissal of BAP Case No. 24-8010.[15]  The BAP considered all of Appellant's arguments and found them to be without merit.  And, as the BAP recognized, the Rule 8002 deadline for filing a notice of appeal is mandatory in the Sixth Circuit.  A party must either meet the deadline, seek an extension of the deadline from the bankruptcy court pursuant to Bankruptcy Rule 8002(d), or meet one of the applicable exceptions.  Appellant failed to satisfy any of these requirements.  Thus, there was no leniency the BAP could give her when she filed her notice of appeal ten days after the deadline expired.

Additionally, the Panel has given Appellant leniency in the current appeal.  Appellant filed a motion to extend the deadline to submit her brief on the day her brief was due.  As a matter of course, the Panel granted her motion and extended the briefing schedule.  Appellant

---

[15]Appellant appealed the dismissal of BAP Case No. 24-8010 to the Sixth Circuit on July 9, 2024.  That appeal is currently in briefing.  (6th Cir. Case No. 24-5625.)

has been given leniency when there was leniency to be given, including by considering her reply brief even though it was filed four days late.

As for her remaining arguments—that she was not given time to respond to the *Instanter* Motion and that Debtor filed his brief late to gain a tactical advantage—they are also meritless. Debtor's counsel believed he had filed his brief timely. Although the briefing letter set forth dates for each party's deadline, it did not specify what time zone controlled the determination of timeliness. The Sixth Circuit spans two time zones. The error Debtor's counsel made is easy to understand. He thought he was filing his brief timely at 11:40 PM on October 9, 2024, but, because he was in the Central Time Zone and the BAP clerk's office is in the Eastern Time Zone, the CM/ECF system reflected a filing date of October 10, 2024. Even if the Panel were to determine that the Eastern Time Zone controlled issues of timeliness, Debtor's brief would only be 40 minutes late. Not only is it hard to imagine how this prejudiced Appellant, but it is difficult to discern what tactical advantage this could give Debtor.

As stated *supra*, Appellant waited until the day her initial brief was due to seek an extension of the deadline, and Debtor was not given time to respond to that request. Instead, the Panel granted it as a matter of course and gave Appellant an additional thirty days to file her brief. Given the multi-day extension allowed to Appellant, her request to strike Debtor's brief as late by forty minutes is particularly aggressive, especially considering that Appellant filed her reply brief four days late in this appeal. Under the circumstances, there is no basis for striking Debtor's appellate brief.

## II. 28 U.S.C. § 1915(e)(2)(B)(ii)

If a filing fee is waived pursuant to 28 U.S.C. § 1915(a), subsection (e)(2)(B)(ii) provides that "the court *shall* dismiss the case at any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted[.]" (emphasis added). This provision requires a court to sua sponte screen a complaint pursued in forma pauperis to determine if it adequately states a claim for relief. *Benson v. O'Brian*, 179 F.3d 1014, 1016 (6th Cir. 1999); *McGore v. Wrigglesworth*, 114 F.3d 601, 609 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199, 203, 127 S. Ct. 910, 914 (2007) ("The moment the complaint is

filed, it is subject to review under § 1915(e)(2).") This screening requirement applies equally to parties represented by counsel and those proceeding pro se. *Huber v. Ohio*, 920 F. Supp. 2d 858, 860 (S.D. Ohio 2012).

"Under the screening procedures of § 1915(e)(2), [a p]laintiff is not entitled to any notice from the Court of its intention to dismiss, sua sponte, the civil action and is not entitled to an opportunity to show cause why the action should not be dismissed." *Young v. Ramsey*, No. CIV. 06-12269, 2006 WL 2086024, at *1 (E.D. Mich. July 25, 2006) (citing *Benson*, 179 F.3d at 1015-16)); *see also Wells v. Morgan*, No. 98-5333, 1999 WL 191379, at *1 (6th Cir. March 19, 1999) (unpublished table decision) (rejecting the plaintiff's contention on appeal that the district court erred without giving an opportunity to amend his complaint and stating that a "court may dismiss [a] plaintiff's complaint without affording him an opportunity to amend his complaint because 28 U.S.C. § 1915(e)(2)(B) . . . permits a dismissal at any time without prior notice." (citations omitted)). Although, "a district court may allow a plaintiff to amend his complaint before sua sponte dismissing it under § 1915, it is not required to do so." *Watts v. Cont'l Heritage Ins. Co.*, No. 18-3267, 2018 U.S. App. LEXIS 22132, *4-5 (6th Cir. 2018); *LaFountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013). A "court is not required to grant leave [to amend] where an amendment would be futile." *Bell v. Kenney*, No. 20-5537, 2020 U.S. App. LEXIS 39898, at *3 (6th Cir. Dec. 18, 2020) (citing *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962)). Additionally, "[l]eave to amend should not be granted where a plaintiff cannot cure the deficiency in his complaint." *Owens v. Hill*, No. 1:24-CV-01096-JDB-TMP, 2024 WL 4453840, at *3 (W.D. Tenn. Oct. 9, 2024) (citing *Gonzalez-Gonzalez v. United States*, 257 F.3d 31, 37 (1st Cir. 2001)); *see also Chandler v. Fine*, No. CV 2:23-02325-SHM-TMP, 2025 WL 539956, at *10 (W.D. Tenn. Feb. 18, 2025) (citing *Curley v. Perry*, 246 F.3d 1278, 1284 (10th Cir. 2001) ("We agree with the majority view that sua sponte dismissal of a meritless complaint that cannot be salvaged by amendment comports with due process and does not infringe the right of access to the courts.").[16]

---

[16]The concurrence cites the cases of *Rashada v. Flegel*, No. 23-1674, 2024 WL 1367436, at *4-5 (6th Cir. 2024), and *Lucas v. Chalk*, 785 F. App'x 288, 291-92 (6th Cir. 2019), for the proposition that "a trial court abuses its discretion when it *sua sponte* and without any notice deprives a *pro se* plaintiff proceeding under 28 U.S.C. § 1915 of the opportunity to amend (or even request leave to amend) by dismissing the complaint with prejudice." Those

In *Hill v. Lappin*, 630 F.3d 468 (6th Cir. 2010), the Sixth Circuit determined that the standards applicable to motions to dismiss under Rule 12(b)(6) "govern[ ] dismissals for failure to state a claim under" 28 U.S.C. § 1915(e)(2)(B). *Hill*, 630 F.3d at 470-71 (citation omitted). Thus, "to survive scrutiny under . . . § 1915(e)(2)(B)(ii), 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" *Lappin*, 630 F.3d at 471 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009)). In determining if a complaint adequately states a claim for relief, a court "must construe the complaint in a light most favorable to the plaintiff, accept his or her factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claims that would entitle him to relief." *Bibbo v. Dean Witter Reynolds, Inc.*, 151 F.3d 559, 561 (6th Cir. 1998) (citation omitted). The complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56, 127 S. Ct. 1955, 1965 (2007) (citation omitted). "While *pro se* pleadings are to be liberally construed and held to less stringent standards than formal pleadings drafted by lawyers, *pro se* plaintiffs must still satisfy basic pleading requirements." *Huber*, 920 F. Supp. 2d at 860 (cleaned up) (quoting *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007)); *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989) (citation omitted); *see also Tomey v. Dizinno* (*In re Dizinno*), 535 B.R. 73, 77 (Bankr. M.D. Pa. 2015) (cleaned up) ("Although the standard used to evaluate a motion to dismiss in a *pro se* action is a liberal one, the court must still endeavor to separate pleadings that . . . are no more than conclusions from well-pleaded factual allegations that are entitled to a presumption of veracity.").

If claims asserted in a complaint are barred by an applicable statute of limitations, dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim is appropriate. *Widner v. Bracke*, No. 99-6328, 2000 WL 1140693, at *2 (6th Cir. Aug. 7, 2000) (unpublished table decision). "Although the statute of limitations is an affirmative defense, *sua sponte* dismissal

---

cases are readily distinguishable from the case on appeal. In both *Rashada* and *Lucas*, the dismissals were based on a procedural defect concerning the correct party-defendant—an easily curable defect. *Rashada*, 2024 WL 1367436, at *5 ("Given Rashada's *pro se* status in the district court and the highly technical nature of pleading official and personal capacity claims, in the 'interest of justice,' Rashada should be permitted to amend his complaint and pursue his claims against Defendants in their proper capacities."); *Lucas*, 785 F. App'x at 292 (identifying that a "crucial factual assertion . . ., if pled [for a constitutional claim under § 1983], would have saved the original *pro se* complaint from sua sponte dismissal").

[under § 1915(e)(2)(B)(ii)] is appropriate when the defense is obvious from the face of the complaint and no further factual record is required to be developed." *Lewis v. Exonmobil Corp.*, No. CV 22-1535-CFC, 2023 WL 3864955, at *2 (D. Del. June 7, 2023) (cleaned up) (citing *Davis v. Gauby*, 408 F. App'x 524, 526 (3d Cir. 2010)). "[A] federal court has the discretion to raise the statute of limitations issue sua sponte while screening a complaint" under 28 U.S.C. § 1915. *Simmons v. City of Warren*, No. 24-12617, 2024 WL 4495486, at *1 (E.D. Mich. Oct. 15, 2024) (citing *Jones*, 549 U.S. at 215). In considering whether a claim is time-barred, a court may consider whether any tolling doctrines apply; however, if the plaintiff fails to allege any basis for tolling a statute of limitations and the record makes clear that none exist, dismissal is appropriate. *Hughes v. Lott*, 350 F.3d 1157, 1163 (11th Cir. 2003); *see also Jones v. Johnston*, 160 F. App'x 336, 337 (5th Cir. 2005); *Henderson v. Early Cnty. Sheriff's Dep't*, No. 118CV00057WLSTQL, 2018 WL 11152178, at *3 (M.D. Ga. May 7, 2018) (concluding that dismissal under § 1915(e)(2)(B) was proper where plaintiff failed to allege he was entitled to tolling and "an independent review of the factual allegations in his complaint [did] not reveal any arguable basis for which the limitations period could be tolled"); *Widner*, 2000 WL 1140693, at *2.

In the case on appeal, Appellant has raised three issues that require this Panel to review the bankruptcy court's decision to dismiss on the merits. The first two issues are easily resolved. First, it is well settled that a court is not required to provide the plaintiff notice and an opportunity to be heard when reviewing a complaint under 28 U.S.C. § 1915(e)(2). *See Benson*, 179 F.3d at 1016. Thus, the bankruptcy court did not err in sua sponte reviewing the complaint in this case without providing Appellant notice that it was doing so. Second, a court may dismiss a complaint under 28 U.S.C. § 1915(e)(2)(B) without providing the litigant an opportunity to amend if such amendment would be futile. *Bell*, 2020 U.S. App. LEXIS 39898, at *3. As will be explained *infra*, Appellant's claims are barred by statutes of limitations and none of the various tolling doctrines worked to make her claims timely. Thus, any attempt to amend Appellant's complaint would be futile.[17]

---

[17]Because Appellant asserts for the first time on appeal that the bankruptcy court should have allowed her to amend her complaint under Federal Rule of Civil Procedure 15, she has waived the argument. *See Wysong Corp.*

The third issue the Panel must review on the merits – whether the bankruptcy court erred in dismissing the Complaint under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim – is more complex and requires the Panel to examine both federal and state law.

### III.  11 U.S.C. § 523(a)

#### A.  Relevant Law

In the case on appeal, the bankruptcy court determined that the statutes of limitations under both California and Tennessee law prevented Appellant from bringing a fraud or conspiracy-to-defraud action under 11 U.S.C. § 523(a) against Debtor.  Accordingly, the bankruptcy court held that Appellant's dischargeability action had to be dismissed for failure to state a cause of action.  The Panel will examine whether the bankruptcy court's determination was erroneous.

Section 523(a) of the Bankruptcy Code excepts certain debts from an individual debtor's discharge.  "[W]hether a valid debt is owed and . . . whether that debt is dischargeable, are two separate inquiries."  *Muhammad v. Chasteen* (*In re Chasteen*), No. 95-3389, 1997 WL 37039, at *2 (10th Cir. Jan. 30, 1997) (unpublished table decision).  A party to whom a debt is owed by a debtor in bankruptcy may be unable to have that debt declared nondischargeable for a variety of reasons.  One such consideration is whether that party's dischargeability action is time-barred by a statute of limitations.  *Resolution Tr. Corp. v. McKendry* (*In re McKendry*), 40 F.3d 331, 337 (10th Cir. 1994).  "[A] complaint which shows on its face that relief is barred by the affirmative defense of statute of limitations is properly" dismissed "for failure to state claim upon which

---

*v. APN, Inc*., 889 F.3d 267, 272 n.2 (6th Cir. 2018).  Notably, any such request would have been considered under Bankruptcy Rule 9023 or 9024 and "not simply under Rule 15's 'modest requirements.'" *Dykes-Bey v. Washington*, No. 21-1260, 2021 WL 7540173, at *3 (6th Cir. Oct. 14, 2021) (citation omitted); *see also Leisure Caviar, LLC v. U.S. Fish & Wildlife Serv.*, 616 F.3d 612, 616 (6th Cir 2010) ("When a party seeks to amend a complaint after an adverse judgment, . . . [i]nstead of meeting only the modest requirements of [Federal Rule of Civil Procedure] 15, the claimant must meet the requirements for reopening a case established by Rule 59 or 60.").  Under Rule 59, made applicable to adversary proceedings by Bankruptcy Rule 9023, "a court may alter the judgment based on: '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Leisure Cavi*ar, 616 F.3d at 610 (quoting *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005)).  Had Appellant sought to amend her complaint, it would not have been an abuse of discretion for the bankruptcy court to have denied the motion if it sought to add claims or rely on new legal theories based on, as here, facts known to Appellant when she filed her original complaint. *Thomas v. Haske*, No. 23-1852, 2024 WL 4257197, at *3 (6th Cir. Apr. 2, 2024).

relief can be granted." *Gibson v. Am. Bankers Ins. Co.*, 91 F. Supp. 2d 1037, 1040 (E.D. Ky. 2000) (citation omitted) (dismissing under Federal Rule of Civil Procedure 12(b)(6)), *aff'd*, 289 F.3d 943 (6th Cir. 2002).

When a plaintiff has not obtained a prepetition judgment against a debtor, a court must consult state statutes of limitations to determine whether a cause of action is timely. *In re McKendry*, 40 F.3d at 337. In the case on appeal, the Investor Financing Agreements provided they would be governed by Tennessee law. The Corporation was a Tennessee corporation and Debtor is a Tennessee resident. Appellant is a resident of California.

When a case involves contacts with more than one state, courts must typically engage in a choice-of-law analysis. *State Bank of Florence v. Miller* (*In re Miller*), 459 B.R. 657, 671 (B.A.P. 6th Cir. 2011), *aff'd*, 513 F. App'x 566 (6th Cir. 2013). "An initial task of a choice-of-law analysis is to determine whether there is an actual conflict between the substantive law of the interested jurisdictions." *In re Appalachian Fuels, LLC*, 493 B.R. 1, 18 (B.A.P. 6th Cir. 2013) (citations omitted). "A court need not make a choice of law if, in fact, there is not a real difference or conflict between the relevant laws of the states involved[.]" *Armstrong v. U.S. Fire Ins. Co.*, 606 F. Supp. 2d 794, 802 (E.D. Tenn. 2009) (citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 816, 105 S. Ct. 2965, 2976 (1985)); *see also Sutherland v. DCC Litig. Facility, Inc.* (*In re Dow Corning Corp.*), 778 F.3d 545, 555 (6th Cir. 2015) (Sutton, J., dissenting) (citation omitted) ("The first imperative of a conflict-of-laws problem is: a conflict. When all roads lead to the same result, there is no conflict to resolve."). In the case on appeal, there is no conflict between California's and Tennessee's statutes of limitations or tolling doctrines. Accordingly, the bankruptcy court correctly determined that it did not need to engage in a conflict-of-law analysis.

In the case on appeal, Appellant's § 523 claims against Debtor were based on allegations of fraud and conspiracy-to-defraud. The statute of limitations for such claims is three years in both California and Tennessee. Cal. Civ. Proc. Code § 338(d); Tenn. Code Ann. § 28-3-105(1); *see also Swafford v. Memphis Individual Prac. Ass'n*, No. 02A01-9612-CV-00311, 1998 WL 281935, at *11 (Tenn. Ct. App. June 2, 1998) (citing *Wyatt v. Union Mortg. Co.*, 598 P.2d 45, 53 (Cal. 1979) ("'[A] civil conspiracy . . . is neither a punishable offense standing alone nor a wrong

capable of supporting a cause of action by its own weight.' Consequently, the procedural law applicable to the gravamen of the complaint applies to the civil conspiracy claim.").

Under California law, the statute of limitations for fraud and conspiracy-to-defraud claims begins to run upon "the discovery, by the aggrieved party, of the facts constituting the fraud or mistake." Cal. Civ. Proc. Code § 338(d).

> The courts interpret discovery in this context to mean not when the plaintiff became aware of the specific wrong alleged, but when the plaintiff suspected or should have suspected that an injury was caused by wrongdoing. The statute of limitations begins to run when the plaintiff has information which would put a reasonable person on inquiry.

*Kline v. Turner*, 87 Cal. App. 4th 1369, 1374 (Cal. Ct. App. 2001). California law also provides that the statute of limitations for conspiracy-to-defraud claims may be tolled by the "last overt act doctrine." *Aaroe v. First Am. Title Ins. Co.*, 222 Cal. App. 3d 124, 128 (Cal. Ct. App. 1990). This doctrine "prevents the statute of limitations from beginning to run in certain cases, *even after the fraud is discovered*, until the commission of the last overt act pursuant to the conspiracy." *Id.* (cleaned up) (citing *Wyatt*, 598 P.2d at 54). The last overt act occurs once the "substantive offense which is the primary object of the conspiracy" is complete. *Livett v. F. C. Fin. Assocs.*, 124 Cal. App. 3d 413, 419 (Cal. Ct. App. 1981) (citation omitted). "[S]ubsequent conduct related to the conspiracy, such as flight or concealment, do not constitute 'overt acts' sufficient to" restart the running of the statute of limitations. *Id.*

In Tennessee, the statute of limitations for fraud and conspiracy-to-defraud actions runs "from the accruing of the cause of action." Tenn. Code Ann. § 28-3-105(1).

> For the purposes of this statute of limitations, a cause of action accrues either when the wrongful act occurs or when the plaintiff discovers, or in the exercise of reasonable care and diligence should have discovered, that it has suffered an injury and the cause of the injury. Under the discovery rule, the statute of limitations is tolled only during the period of time when the plaintiff has no actual knowledge of the injury and, as a reasonable person, would not be placed on inquiry notice. However, the discovery rule does not permit a plaintiff to delay filing suit until all the injurious effects or consequences of the alleged tortious conduct are fully known.

*Levine v. March*, 266 S.W.3d 426, 435 (Tenn. Ct. App. 2007) (internal citations omitted). Tennessee law also provides that the "last overt act" doctrine tolls the statute of limitations for conspiracy-to-defraud claims when "there is a continuing conspiracy." *Emerson v. Machamer*, 431 S.W.2d 283, 286 (Tenn. 1968) ("It is not when the result or the suffering is continued – not when the suffering is done, but when the act is done which causes the suffering.").

In addition to tolling that may be applicable under state law, federal courts may apply the common-law doctrine of equitable tolling. This doctrine allows a court "to toll a statute of limitations when 'a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control.'" *Robertson v. Simpson*, 624 F.3d 781, 783 (6th Cir. 2010) (quoting *Graham–Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560–61 (6th Cir. 2000) (citation omitted)). "Equitable tolling is an extraordinary remedy that federal courts apply 'only sparingly' and not to a 'garden variety claim of excusable neglect.'" *Allen v. Fait*, No. 23-6052, 2025 WL 488681 (6th Cir. Feb. 13, 2025) (quoting *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96, 111 S. Ct. 453, 458 (1990)); *Graham-Humphreys*, 209 F.3d at 552 (citation omitted) ("Absent compelling equitable considerations, a court should not extend limitations by even a single day.") "Equitable tolling is not designed to save litigants from the foreseeable consequences of their own strategic choices." *Seoane-Vazquez v. Ohio State Univ.*, 577 F. App'x 418, 427 (6th Cir. 2014). And, neither a party's pro se status nor his ignorance of the law are "sufficient to constitute an extraordinary circumstance" justifying the application of the doctrine. *Keeling v. Warden, Lebanon Corr. Inst.*, 673 F.3d 452, 464 (6th Cir. 2012) (citation omitted).

The Sixth Circuit traditionally considers five factors when determining whether equitable tolling is warranted:

> 1) lack of notice of the filing requirement; 2) lack of constructive knowledge of the filing requirement; 3) diligence in pursuing one's rights; 4) absence of prejudice to the defendant; and 5) the plaintiff's reasonableness [in] remaining ignorant of the particular legal requirement.

*Truitt v. Cnty. of Wayne*, 148 F.3d 644, 648 (6th Cir. 1998) (citing *Andrews v. Orr*, 851 F.2d 146, 151 (6th Cir.1988)). These five factors "are not comprehensive, nor is each of the five factors relevant in all cases." *Amini v. Oberlin College*, 259 F.3d 493, 500 (6th Cir. 2001) (citation

omitted).   More recently, the Supreme Court has condensed the analysis into a two-factor inquiry.  "Generally, a litigant seeking equitable tolling bears the burden of establishing two elements: (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way." *Pace v. DiGuglielmo*, 544 U.S. 408, 418, 125 S. Ct. 1807, 1814 (2005).[18]  The decision whether to equitably toll a period of limitations must be decided on a case-by-case basis." *Amini*, 259 F.3d at 500 (citations omitted).

The Sixth Circuit has acknowledged that equitable tolling may apply to analysis of a claim under 28 U.S.C. § 1915(e)(2)(B)(ii). *McGhee v. Disney Store*, 53 F. App'x 751, 752 (6th Cir. 2002).  In *Jackson v. Transportation Security Administration*, No. 4:19-CV-1676, 2019 WL 7049883, at *5 (N.D. Ohio Dec. 23, 2019), the plaintiff filed her complaint six weeks after the relevant statute of limitations had expired.  She offered no reason for the delay in filing her action.  In dismissing her complaint under 28 U.S.C. § 1915(e)(2)(B) for failure to state a claim, the district court stated: "Plaintiff has not presented the Court with evidence that equitable reasons exist to excuse her failure to comply with the prerequisite to filing her lawsuit.  Equitable tolling, waiver, and estoppel are available only in compelling circumstances which justify a departure from established procedure." *Jackson*, 2019 WL 7049883, at *5 (cleaned up) (citing *Puckett v. Tenn. Eastman Co.*, 889 F.2d 1481 (6th Cir. 1989)).  On appeal, the Sixth Circuit affirmed, holding that plaintiff "did not exercise due diligence in pursuing her claims, and therefore . . . , the district court did not abuse its discretion in concluding that she was not entitled to equitable tolling of the statutes of limitations[.]" *Jackson v. Transp. Sec. Admin.*, No. 20-3097, 2021 WL 3575046, at *2 (6th Cir. Apr. 19, 2021) (citing *Truitt*, 148 F.3d at 648).

### B.  Analysis

In the case on appeal, Appellant alleged that Debtor and the Co-Defendants used "false and deceptive tactics to induce [her] to invest in his/their scheme and . . . used the money for his/their own personal use or to further other fraudulent schemes." (Adv. Proc. Compl. at 3,

---

[18]Courts in the Sixth Circuit continue to use both tests when analyzing equitable tolling arguments. *Compare Allen v. Fait*, No. 23-6052, 2025 WL 488681, at *4 (6th Cir. Feb. 13, 2025) (analyzing equitable tolling claim under five traditional factors), *with Bennett v. Fitz*, No. 24-5679, 2024 WL 5359540, at *2 (6th Cir. Dec. 10, 2024) (analyzing tolling claim under the two *Pace* factors).

Adv. Proc. No. 3:24-ap-90025 ECF No. 1.)  She also alleged that Debtor and the Co-Defendants "started making excuses about the two properties soon after the investments were made in 2012 that they never actually used [Appellant's] money for the intended investments."  (*Id.* at 4.) Appellant supported these claims with the emails she attached as an exhibit to the Complaint. The date range of the attached emails was July 6, 2012, to September 16, 2021.  (*Id.* at 15-23.)

In her opening appellate brief, Appellant asserted that a $1,000.00 check Debtor sent her on August 20, 2021, "reinstat[ed] the validity and confirmation acknowledging a 'DEBT OUTSTANDING.'  Rendering any alleged statutes of limitation . . . 'Inoperable and Unapplicable' here."  (Appellant Br. at 7, BAP Case No. 24-8011 ECF No. 12.)  Similarly, in her reply brief, she argued that "each and every time a payment was made the statute of limitations is tolled and the last payment was made in September 2021."  (Reply Br. at 3,[19] BAP Case No. 24-8011 ECF No. 17.)  She also contended

> [Debtor] and his conconspirators continually stated that they would pay Appellant and realizing that litigation would be very expensive for her Appellant decided to continue to rely on [Debtor] and coconspirators['] verbal assurances and written promises to pay and not file bankruptcy in the hopes that [Debtor] and his coconspirators would follow through on their promises.  They intentionally deceived Appellant and others all the while claiming to have no money[.]

(*Id.* at 3-4.)

With respect to her fraud claims, the emails attached to the Complaint demonstrate that Appellant was put on notice as early as May 2013 that her investments were not going to be repaid as contemplated by the Investor Financing Agreements.  Instead, Appellant began receiving small monthly payments that quickly became sporadic.  On September 10, 2015, Huffman sent her an email apologizing for the "poor payment history" and informing her that the Corporation was no longer in existence.  (Adv. Proc. Compl. Ex. A at 21, Adv. Proc. No. 3:24-ap-90025 ECF No. 1.)  In response, Appellant told Huffman that her investment had become "a

---

[19]Appellant included with her reply brief additional email text and copies of cashier's checks that were not part of the record in the bankruptcy court. (*Id.* at 4, 10, 11.)  The Panel will not consider the extra-record material. *See SmartSky Networks, LLC v. Gogo Bus. Aviation, LLC*, No. 2023-1058, 2024 WL 358136, at *2 (Fed. Cir. Jan. 31, 2024) (striking extra-record materials cited in the appellant's reply brief); *In re Long Dev., Inc.*, 117 F.3d 1420, at *9 (6th Cir. 1997) (table) (striking the reply brief to the extent that it relied on extra-record materials).

financial disaster." (*Id*.) Thus, even assuming Appellant was not put on inquiry notice of the alleged fraud until she received the September 2015 email, the statutes of limitations for her fraud claims expired in 2018.

The same conclusion must be reached with respect to her conspiracy-to-defraud claims. Appellant asserted that Debtor and the Co-Defendants conspired to fraudulently induce her to invest money in their real estate business in 2012. She also alleged that Debtor and the Co-Defendants "started making excuses about the two properties *soon* after the investments were made in 2012" and used her investments for allegedly illicit purposes. (*Id*. at 4 (emphasis added).) The emails demonstrate that the investment did not go as intended, and it appears that the properties were never purchased; however, the emails also make clear that the last overt act in any alleged conspiracy occurred when Debtor and the Co-Defendants received Appellant's investments in 2012 and then failed to purchase the real estate. The fact that they made sporadic payments over the next several years has no bearing on the alleged conspiracy. Appellant did not allege that Debtor and the Co-Defendants sent those payments to her in an effort to entice her to invest more money with them or to stop her from pursuing a claim against them. If anything, the continuing payments work against Appellant's conspiracy allegations. If the goal was to obtain an investment from Appellant without any intention of ever paying her back, sending her payments over a period of nine years is an odd way of doing that.

Appellant did not assert in either her complaint or her appellate briefs that the doctrine of equitable tolling applied in this case. She did not allege that she was unaware of the statutes of limitations or was ignorant of her rights under California or Tennessee law. She did not allege that Debtor (or any of the Co-Defendants) prevented her in any way from bringing a state court action to enforce her rights under the Investor Financing Agreements. Instead, she claimed that she knew litigation would be expensive and so she decided to rely on their "verbal assurances and written promises to pay" as evidence that they "would follow through on their promises." (Reply Br. at 4, BAP Case No. 24-8011 ECF No. 17.) These decisions do not rise to the level of "compelling equitable considerations" that justify the application of equitable estoppel.

The contracts at issue in this case were executed in 2012. The emails Appellant attached to her complaint demonstrate that by mid- to late-2015 it was clear that full repayment was unlikely. On August 16, 2015, Appellant sent an email stating:

> IT is very frustrating to have put my trust in you and have the "guarantee of payment with interest" and to have to constantly keep asking for payment promised yet be given crumbs. . . . THe only reason I did the investment was because of the guarantee of full payment and this is not happening.

(Adv. Proc. Compl. Ex. A at 21, Adv. Proc. No. 3:24-ap-90025 ECF No. 1.) Despite her apparent frustration, Appellant waited another nine years to take any action to enforce her rights under the Investor Financing Agreements. Although her desire to trust people and take them at their word may be admirable, it cannot serve as the basis for equitably extending the time for bringing a claim.

To the extent Appellant asserted alleged statements made in 2021 or the continuing payments revived the debt (as opposed to tolled the statute of limitations), Appellant's argument fails. In Tennessee, "[t]o revive a debt barred by the statute of limitations the acknowledgment must be a direct and unconditional one, or there must be an express and unconditional promise to pay it." *Luna v. Edmiston*, 37 Tenn. 159, 161 (Tenn. 1857). "This can only be effected by a distinct and unequivocal acknowledgment of the debt . . . , by an express promise to pay, or an admission of an existing debt still due[.]" *Broddie v. Johnson*, 33 Tenn. 464, 467 (1853) (citation omitted). A payment made to plaintiff to stop "incessant complain[ing]" is not an acknowledgment of a debt nor does it evince a willingness to pay "anything other than the amount of the check." *Swett v. Binkley*, 104 S.W.3d 64, 68 (Tenn. Ct. App. 2002); *C.A. Hobbs, Jr., Inc. v. Brainard*, 919 S.W.2d 337 (Tenn Ct. App. 1995) (holding that, although "[t]he payment of interest on a promissory note" normally revives a debt, merely sending a non-interest payment without proof that the remitter was expressing a willingness to pay is not sufficient to revive a debt under Tennessee law). Appellant did not include anything in the Complaint or its exhibit that demonstrated, on its face, that anyone—let alone Debtor—made a "direct and unconditional" promise to revive the debt owed to Appellant or that they made an "express and unconditional promise to pay it." The only thing the emails demonstrate is that the authors (none of which is Debtor) intended to remit sporadic payments to her.

Under California law, "[n]o acknowledgment or promise is sufficient evidence of a new or continuing contract, by which to take the case out of the operation of this title, unless the same is contained in some writing, signed by the party to be charged thereby[.]" Cal. Civ. Proc. Code § 360 (emphasis added). The writing must demonstrate a "distinct and unqualified admission of an existing debt, … signed by the party to be charged, and without intimation of an intention to refuse payment thereof[.]" *In re Hall*, 70 F. Supp. 27, 29 (S.D. Cal. 1946) (citation omitted), *rev'd on other grounds, Pac. States Corp. v. Hall*, 166 F.2d 668 (9th Cir. 1948). Although Appellant included many emails in her exhibit to the Complaint, nothing she presented was signed by Debtor (or the Co-Defendants). Thus, any argument with respect to revival under California law fails.

To the extent that Appellant argues that Debtor revived the debt by listing it in his bankruptcy petition, that argument is also meritless. The listing of a debt on a chapter 7 or 13 petition does not revive a debt that is otherwise barred by a statute of limitations. *See In re Shippy*, No. 314-09865, 2016 WL 1178351, at *2 (Bankr. M.D. Tenn. Mar. 23, 2016) (citation omitted) ("[T]he majority of courts that have addressed the issue have rejected the argument that the listing of a claim on a debtor's bankruptcy schedules is an acknowledgment of the debt[.]"); *In re Vaughn*, 536 B.R. 670, 680 (Bankr. D.S.C. 2015) ("[I]n most relevant contexts, listing a debt in a bankruptcy case is not a statement of intention to pay, but of a request of discharge of the liability."); *Biggs v. Mays*, 125 F.2d 693, 697 (8th Cir. 1942) (citations omitted) ("The listing of a debt in the bankrupt's schedules is not such an acknowledgment as implies an intention to pay it."); *In re Tragopan Props., LLC*, 263 P.3d 613, 618 (2011) ("[T]he very purpose of listing the debt in [the schedules to a bankruptcy petition] is to obtain relief from the debt.")).

In discussing the timeliness of her claims in her initial brief, Appellant focuses almost exclusively on fraudulent conveyance law under California's Uniform Voidable Transactions Act, Cal. Civ. Code §§ 3439 – 3449. (Appellant Br. at 4, BAP Case No. 24-8011 ECF No. 12.) Appellant, however, did not raise this argument with the bankruptcy court. As a general rule, "a reviewing court will not consider issues raised for the first time on appeal." *Stevenson v. J.C. Bradford & Co.* (*In re Cannon*), 277 F.3d 838, 848 (6th Cir. 2002) (citation omitted). "The Supreme Court has committed the question of which circumstances warrant a departure from the

general rule to the sound discretion of the appellate courts." *Id.* (citing *Singleton v. Wulff*, 428 U.S. 106, 121, 96 S. Ct. 2868, 2877 (1976)).

> The exercise of such discretion is guided by factors such as: 1) whether the issue newly raised on appeal is a question of law, or whether it requires or necessitates a determination of facts; 2) whether the proper resolution of the new issue is clear and beyond doubt; 3) whether failure to take up the issue for the first time on appeal will result in a miscarriage of justice or a denial of substantial justice; and 4) the parties' right under our judicial system to have the issues in their suit considered by both a district judge and an appellate court.

*Friendly Farms v. Reliance Ins. Co.*, 79 F.3d 541, 545 (6th Cir. 1996) (citation omitted). These factors do not weigh in favor of considering Appellant's fraudulent-transfer argument in this appeal especially in light of the posture of her complaint, the failure to cite to any fraudulent-transfer statute, and the bankruptcy court's required review under § 1915(e). Resolution of a fraudulent-transfer claim would require various factual determinations and is not clear and beyond doubt. Consequently, consideration of Appellant's newly raised issue is not appropriate in this case.[20]

In summary, the bankruptcy court properly determined that Appellant's claims for relief under 11 U.S.C. § 523(a) were barred by the applicable statutes of limitations. To be timely, Appellant's fraud/conspiracy-to-defraud claims against Debtor needed to be brought by 2018. None of the various tolling statutes worked to extend the deadline and Appellant did not demonstrate that Debtor ever revived the debt owed to her under the Investor Financing Statements.

---

[20]Even if the panel were to consider Appellant's newly raised fraudulent-transfer claims, they also are barred by the relevant statutes of limitations. California's version of the Uniform Fraudulent Transfer Act (now known as the "Uniform Voidable Transactions Act") provides that a cause of action with respect to a void or voidable transfer must be brought no more than "seven years after the transfer was made or the obligation was incurred" regardless of when the transfer or obligation was discovered. Cal. Civ. Code § 3439.09(c). In Tennessee, the statute of limitations for most fraudulent-transfer claims is "four (4) years after the transfer was made or the obligation was incurred[.]" Tenn. Code Ann. § 66-3-310. Where a party alleges that the transfer or obligation was made with actual intent to hinder, delay, or defraud a creditor, the action must be brought "within four (4) years after the transfer was made or the obligation was incurred or, if later, within one (1) year after the transfer or obligation was or could reasonably have been discovered by the claimant[.]" Tenn. Code Ann. § 66-3-310(1). As noted, Appellant alleged that Debtor and the Co-Defendants "started making excuses about the two properties soon after the investments were made in 2012 [and] . . . they never actually used [Appellant's] money for the intended investments." (Adv. Proc. Compl. at 4, Adv. Proc. No. 3:24-ap-90025 ECF No. 1.)

## IV. 11 U.S.C. § 727(a)

As the bankruptcy court recognized, the only statute Appellant cited in her complaint was 11 U.S.C. § 523; however, some of her allegations parrot the language of 11 U.S.C. § 727(a)(2)(A) and (a)(3) and she specifically asked for "denial of discharge" in her prayer for relief. As such, the bankruptcy court should have addressed § 727 in its opinion. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991) (citations omitted) ("A pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. We believe that this rule means that if the court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so despite the plaintiff's failure to cite proper legal authority, his confusion of various legal theories, his poor syntax and sentence construction, or his unfamiliarity with pleading requirements."). However, because dismissal of Appellant's § 727 claims for failure to state a claim would have been warranted, any error the bankruptcy court made with respect to this issue was harmless.

Section 727(a)(2) of the Bankruptcy Code provides that "[t]he court shall grant the debtor a discharge, unless"

> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed--
>
> (A) property of the debtor, within one year before the date of the filing of the petition[.]

11 U.S.C. § 727(a)(2)(A). "This section encompasses two elements: 1) a disposition of property, such as concealment, and 2) a subjective intent on the debtor's part to hinder, delay or defraud a creditor through the act disposing of the property." *Keeney v. Smith* (*In re Keeney*), 227 F.3d 679, 683 (6th Cir. 2000) (citation omitted). Additionally, to adequately set forth a § 727(a)(2)(A) claim, a plaintiff must allege that (1) the transfer "took place within one year of the filing of the Debtor's petition for relief," and (2) the transferred property belonged to the debtor. *Buckeye Retirement Co., LLC, Ltd., Swegan* (*In re Swegan*), 383 B.R. 646, 654 (6th Cir. B.A.P. 2008) (citation omitted); *Jordan v. Pritchard* (*In re Pritchard*), 633 B.R. 314, 328 (Bankr. E.D. Tenn. 2021). Failure to adequately set forth these allegations may serve as the

basis for dismissal for failure to state a claim. *In re Pritchard*, 633 B.R. at 328 (dismissing claim under Rule 12(b)(6) because the alleged transfer took place more than one year before the bankruptcy petition was filed); *First Nat'l Bank of Santa Fe v. Orr* (*In re Orr*), No. 11-19580 ABC, 2011 WL 5854712, at *4 (Bankr. D. Colo. Nov. 22, 2011) (citing *Mcorp Mgmt. Sols., Inc. v. Thurman* (*In re Thurman*), 901 F.2d 839, 841 (10th Cir. 1990)) (dismissing § 727(a)(2)(A) claim under Rule 12(b)(6) because "[t]he only property allegedly fraudulently transferred was property of [a corporation], not property of Debtor. Allegations that property of a corporation, in which a debtor has an interest, was transferred with fraudulent intent fails to allege the second element of a § 727(a)(2)(A) claim").

> Section 727(a)(3) provides that "[t]he court shall grant the debtor a discharge, unless"
>
> the debtor has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case[.]

11 U.S.C. § 727(a)(3). "The goal of § 727(a)(3) is to provide creditors with enough information to ascertain the debtor's financial condition and track his financial dealings with substantial completeness and accuracy for a reasonable period past to present." *Farm Credit Mid-Am, PCA, v. Tingle* (*In re Tingle*), 594 B.R. 396, 402 (Bankr. E.D. Ky. 2018) (cleaned up) (quoting *Turoczy Bonding Co. v. Strbac* (*In re Strbac*), 235 B.R. 880, 882 (B.A.P. 6th Cir. 1999)). Failure to allege any facts that "indicate in what manner, [t]he debtor has concealed, destroyed, mutilated, falsified or failed to keep or preserve recorded information . . . does not sufficiently apprise the defendant of the complaint against him, is merely repetitive of the statutory language, and fails to state a cause of action." *Huntington Nat'l Bank v. Schwartzman* (*In re Schwartzman*), 63 B.R. 348, 359 (Bankr. S.D. Ohio 1986) (dismissing under Rule 12(b)(6)); *see also Ralph Wilkens Co., Inc., v. Dykes* (*In re Dykes*), No. 4:05-BK-07711JMM, 2007 WL 1109217, at *2 (Bankr. D. Ariz. Apr. 11, 2007) (concluding that failure to make any "factual allegation of post-bankruptcy lack of cooperation" with the bankruptcy case and process is grounds for dismissal for failure to state a claim upon which relief can be granted under Rule 12(b)(6)).

As stated *supra*, to determine whether a complaint states a claim to relief that is plausible on its face, the complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555–56. In the case on appeal, Appellant merely included the language of § 727(a)(2) and (3) and then asked the bankruptcy court to deny Debtor's discharge. She did not make any specific allegations in setting forth those claims for relief. Although she alleged that Debtor misused her investment, that investment was made in 2012—well outside the one-year lookback period for § 727(a)(2)— and any money Appellant allegedly transferred belonged to the Corporation, not Debtor personally. As for her § 727(a)(3) claim, Appellant did not allege any facts regarding the concealment or destruction of financial records on anyone's part. She simply included the statutory language, and that alone is not sufficient. Appellant did not state a claim for relief under 11 U.S.C. § 727 that was plausible on its face, and dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) would have been appropriate.

## V. Judicial Bias

In her briefs, Appellant argues that the bankruptcy court was biased against her based on her pro se status.

> Judge is Prejudiced against said Appellant and have been advancing arguments for Opposing Party. Practicing law from the bench and ruling for other government figures & agencies for their benefits of getting a Judgment for those government agencies that have been defrauded by this Debtor; but Prejudicially & Discriminatorily rules against this Appellant to prevent her from obtaining the same justice due according to law, without respect of persons. Given an Unjust Collateral Advantage for the DEBTOR undermining the Impartiality of the Judiciary and violating the rights of the parties.
>
> . . . .
>
> The Judge only made such rulings for the benefits of other Government Agencies but did everything possible to block, deter, hinder and prevent this Appellant from obtaining the same result even to the point of advancing arguments for the above named Appellee.

(Appellant Br. at 2.) As with other matters in this appeal, much of Appellant's perception of what has occurred in Debtor's chapter 7 case arises from a misunderstanding of the law and legal procedures, not bias on the bankruptcy court's part.

"A judge's unfavorable disposition toward an individual or his case . . . does not typically constitute judicial 'bias or prejudice.'" *Schilling v. Heavrin* (*In re Triple S Rests., Inc.*), 422 F.3d 405, 417 (6th Cir. 2005) (citing *Liteky v. United States*, 510 U.S. 540, 550-51, 114 S. Ct. 1147, 1155 (1994)).

> Rather, the words "bias" and "prejudice" connote a favorable or unfavorable disposition or opinion that is somehow *wrongful* or *inappropriate*, either because it is undeserved, or because it rests upon knowledge that the subject ought not to possess . . . or because it is excessive in degree.
>
> . . . .
>
> In rare cases, a favorable or unfavorable predisposition can also deserve to be characterized as "bias" or "prejudice" because, even though it springs from the facts adduced or the events occurring at trial, it is so extreme as to display clear inability to render fair judgment. These rare cases aside, however, opinions held by judges as a result of what they learn in the proceedings at issue or in earlier proceedings are not subject to deprecatory characterization as "bias" or "prejudice."

*Id.* (cleaned up).

Insofar as Appellant alleges the bankruptcy court was biased against her because she was not given notice and an opportunity for a hearing on her Complaint and that she was not given an opportunity to amend her complaint under Federal Rule of Civil Procedure 15, those arguments are without merit. As discussed *supra*, the law makes clear that a court is not required to provide a plaintiff notice and an opportunity to be heard when sua sponte reviewing a complaint under 28 U.S.C. § 1915(e)(2)(B). *See Benson*, 179 F.3d at 1016. The law also makes clear that a court is not required to allow a plaintiff an opportunity to amend a complaint when such amendment would be futile. *See Bell*, 2020 U.S. App. LEXIS 39898, at *3. *See Benson*, 179 F.3d at 1016. As such, Appellant was not entitled to notice or an opportunity to amend her Complaint, and the bankruptcy court's "refusal" to allow her to do either of those things did not amount to judicial bias. In sua sponte reviewing Appellant's complaint, the bankruptcy court was undertaking a task mandated by law—the same law that the court used to grant Appellant's IFP Application. As the saying goes, you can't have your cake and eat it too.

Additionally, in reviewing the complaint, the bankruptcy court was not advocating for Debtor. Its review was limited to the four corners of Appellant's Complaint and the attachments

thereto.[21]  Debtor did not receive notice of the court's consideration of the Complaint, nor was he involved in any way.  The bankruptcy court conducted a very thorough review of Appellant's Complaint and issued a thorough and well-reasoned opinion.  The court did not err in its legal conclusions, nor did it misstate any of the facts.  Although Appellant is unhappy with the outcome, the dismissal was not the result of any prejudice or bias against a pro se party.

As for Appellant's assertion that the bankruptcy court ruled in favor of government agencies while dismissing her claims, that argument is also without merit.  On February 15, 2024, the Federal Trade Commission ("FTC") filed a dischargeability complaint against Debtor under 11 U.S.C. § 523(a)(2)(A) and (c) in which it sought to except from Debtor's discharge an April 28, 2023 stipulated judgment entered in district court pursuant to various sections of the Federal Trade Commission Act and the Telemarketing and Consumer Fraud and Abuse Prevention Act in the amount of $17,486,080.85.  On March 19, 2024, the FTC and Debtor filed an agreed motion to approve a stipulated judgment for nondischargeability for the entire amount of the district court judgment.  The parties submitted an order granting the motion to the bankruptcy court on March 19, 2024, and the court signed and entered the order on March 20, 2024.  The bankruptcy court did not hold a hearing on the FTC's complaint.  It did not issue an opinion related to the complaint.  It simply accepted and entered an order—to which Debtor stipulated—that a debt owed to the FTC (and reduced to judgment prepetition) was excepted from Debtor's discharge.  Nothing about the FTC adversary proceeding supports Appellant's contention that the bankruptcy court was biased against her.

In making her judicial bias argument, Appellant also stated that "[t]he court found this Debtor had no right to be a debtor because of his fraud against many creditors and other government entities, and the court was ruling for that reason; prejudicially & discriminatorily." (Appellant Br. at 2.)  The bankruptcy court has made no such ruling in Debtor's case.  He has not been denied a discharge.  No entity has filed a § 727 action against him.  The U.S. Trustee did file a § 727 complaint against Huffman in his chapter 7 case, but the parties ended up agreeing to

---

[21]"[D]ocuments attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss." *Comm. Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)).

dismissal of Huffman's case with a three-year bar to refiling rather than going forward with the § 727 complaint. (See Bankr. No. 3:23-bk-03264 ECF No. 78.)

**CONCLUSION**

Based on the analysis set forth herein, Appellant is not entitled to any of the relief requested in her briefs. There is no basis for striking Debtor's brief. The bankruptcy court did not err in dismissing her Complaint without giving her notice and an opportunity to show cause. The bankruptcy court did not err in dismissing her Complaint without giving her an opportunity to amend. Appellant's 11 U.S.C. § 523(a)(2), (a)(4) and (a)(6) claims were barred by the statutes of limitations under both California and Tennessee law, and she did not demonstrate that any tolling doctrine worked to extend these deadlines. Application of the equitable tolling doctrine is not warranted in this case. Thus, because Appellant's claims were untimely, dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) for failure to state a claim was warranted. Lastly, there is no evidence that the bankruptcy court's ruling resulted from any type of judicial bias or misconduct on the bankruptcy court's part.

———————————

**CONCURRENCE**

———————————

JOHN T. GREGG, Bankruptcy Appellate Panel Judge, concurring in the result.

The bankruptcy court concluded it was unnecessary to determine whether the *pro se* Appellant's complaint stated claims for fraud and conspiracy to defraud because they were subject to the statute of limitations under applicable non-bankruptcy law.[1]   That was the bankruptcy court's sole basis for dismissal, a decision affirmed today by the majority of the Panel.  I write separately to address the doctrine of equitable estoppel as well as the bankruptcy court's decision to dismiss the Appellant's claims with prejudice.

**A.**     *The Doctrine of Equitable Estoppel*

The statute of limitations is a waivable affirmative defense.  *See, e.g.*, *Exp.-Imp. Bank of U.S. v. Advanced Polymer Scis., Inc.*, 604 F.3d 242, 248 (6th Cir. 2010) (citations omitted). Typically asserted by a defendant, it can be grounds for dismissal when the face of the complaint leaves no doubt as to its application.  *See, e.g.*, *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013).  I agree that the statute of limitations for fraud and conspiracy to defraud had technically expired before the Appellee filed his bankruptcy case.

However, certain exceptions to the statute of limitations exist under applicable non-bankruptcy law.  *See Roberson v. Macnicol*, 698 F. App'x 248, 250 (6th Cir. 2017) (court must apply state law exceptions to state law statutes of limitations).  Take, for example, the statute of limitations under Tennessee law, which recognizes the doctrine of equitable estoppel.  *Regions Bank v. Fletcher*, 67 F.4th 797, 805 (6th Cir. 2023) (citations omitted); *see Alsbrook v. Concorde Career Colls., Inc.*, 469 F. Supp. 3d 805, 840 n.7 (W.D. Tenn. 2020) (explaining difference between equitable estoppel and equitable tolling, the latter of which is not recognized by

———————————

[1]The bankruptcy court found it unnecessary to determine whether Tennessee or California law applies to the Appellant's fraud-based claims, as it concluded the outcome would be the same.

Tennessee law (citation omitted)); *Fahrner v. SW Mfg., Inc.*, 48 S.W.3d 141, 145-46 (Tenn. 2001) (distinguishing discovery rule from equitable estoppel).**2**

According to the Tennessee Supreme Court, "the doctrine of equitable estoppel tolls the running of the statute of limitations when the defendant has misled the plaintiff into failing to file suit within the statutory limitations period." *Redwing v. Cath. Bishop for Diocese of Memphis*, 363 S.W.3d 436, 460 (Tenn. 2012) (citations omitted). The doctrine "prevents a defendant from asserting . . . an otherwise valid statute of limitations defense." *Id.* (citation omitted).

A careful reading of the Appellant's complaint and the attachments thereto reveals that the Appellant, at times unartfully, alleges that she was misled by the conduct (*i.e.*, written and oral representations / sporadic payments over many years) of the Appellee and others participating in the fraud. *See, e.g.*, *Keys v. Humana, Inc.*, 684 F.3d 605, 608 (6th Cir. 2012) (court must construe complaint in light most favorable to plaintiff, accepting all allegations as true (citation omitted)). Notwithstanding these allegations, the bankruptcy court did not consider whether the Appellee might be estopped from asserting the statute of limitations. *See Smith v. J.J.B. Hilliard, W.L. Lyons, LLC*, 578 F. App'x 556, 562-63 (6th Cir. 2014) (burden under Tennessee law is initially on defendant to establish that the statute of limitations has run, and thereafter shifts to plaintiff to establish any exception (citations omitted)). From my perspective, if a trial court is willing to *sua sponte* and without notice apply an affirmative defense for the benefit of a defendant, it should also consider whether an exception applies for the benefit of a plaintiff. *See id.*

With that said, the doctrine of equitable estoppel requires a plaintiff to have acted diligently by enforcing her rights within a reasonable period of time after realizing that the defendant's representations and other actions were misleading. *See, e.g.*, *Fahrner*, 48 S.W.3d at 146. A trial court should generally make such a determination based on the facts and circumstances of a particular case, meaning that the evidentiary record should be considered after the pleadings stage of the litigation. *See Hardcastle v. Harris*, 170 S.W.3d 67, 85 (Tenn. Ct. App. 2004) (citation omitted). Although the bankruptcy court did not consider the doctrine of

---

**2**California law likewise recognizes the doctrine of equitable estoppel. *See, e.g.*, *Lantzy v. Centex Homes*, 73 P.3d 517, 533 (Cal. 2003).

equitable estoppel when it dismissed the Appellant's claims, it ultimately does not matter for purposes of this appeal.

The Appellant's complaint alleges that the Appellee and/or others complicit in the fraud last misled her in 2021, at least one year before the Appellant first sought to pursue her claims against the Appellee. In her reply brief on appeal and as highlighted in the majority opinion, the Appellant stated that:

> [Appellee] and his coconspirators continually stated that they would pay Appellant and realizing that litigation would be very expensive for her Appellant decided to continue to rely on [Appellee's] and coconspirators['] verbal assurances and written promises to pay and not file bankruptcy in the hopes that [Appellee] and his coconspirators would follow through on their promises.

(Reply Br. at 3, BAP Case No. 24-8011 ECF No. 17 (emphasis added).)

By clearly acknowledging that she considered - but affirmatively decided not to pursue - litigation because of its cost-prohibitive nature and not as a result of any further representations and/or other actions of the Appellee after 2021, the Appellant admitted that she failed to diligently enforce her alleged claims against the Appellee before the Appellee filed his bankruptcy petition in November 2023. *See Regions Bank*, 67 F.4th at 805-06 (affirming denial of equitable estoppel under Tennessee law because plaintiff did not diligently seek to enforce rights within reasonable amount of time); *Smith*, 578 F. App'x at 562-63 (citing *Redwing*, 363 S.W.3d at 463-64, 467); *see also United States v. Burns*, 109 F. App'x 52, 58 (6th Cir. 2004) (judicial admissions made on appeal properly considered). Accordingly, in light of her own admissions, the Appellant would be unable to establish that the Appellee should be equitably estopped from asserting the statute of limitations.

**B.     *Dismissal with Prejudice***

Somewhat relatedly, I have reservations regarding the bankruptcy court's decision to dismiss the Appellant's claims with prejudice. The majority of the Panel concludes that if the Appellant truly wanted to file an amended complaint after the bankruptcy court entered a final order dismissing her claims with prejudice and without notice, she should have filed a motion pursuant to Fed. R. Bankr. P. 9023 (incorporating Fed. R. Civ. P. 59) or Fed. R. Bankr. P. 9024

(incorporating Fed. R. Civ. P. 60). Because the Appellant did not do so, the majority reasons she has no recourse through this appeal. I must respectfully part ways with the majority on this point.

The Sixth Circuit Court of Appeals has previously held in unpublished decisions that a trial court abuses its discretion when it *sua sponte* and without any notice deprives a *pro se* plaintiff proceeding under 28 U.S.C. § 1915 of the opportunity to amend (or even request leave to amend) by dismissing the complaint with prejudice. *Rashada v. Flegel*, No. 23-1674, 2024 WL 1367436, at *4-5 (6th Cir. 2024); *Lucas v. Chalk*, 785 F. App'x 288, 291-92 (6th Cir. 2019); *cf. Berndt v. Tennessee*, 796 F.2d 879, 882 (6th Cir. 1986) (remanding with instructions to grant leave to amend to *pro se* plaintiff proceeding under 28 U.S.C. § 1915 but expressing no opinion as to whether remand would be appropriate in all circumstances (citation omitted)).

The Sixth Circuit's decisions are on point in the context of this appeal. The bankruptcy court, *sua sponte* and without any notice, dismissed the Appellant's complaint with prejudice. The bankruptcy court gave no reason for its decision in this regard, including why an amendment would be futile. Relying on the aforementioned decisions from the Sixth Circuit, I conclude that the bankruptcy court should have given the Appellant an opportunity to amend her complaint instead of dismissing her claims with prejudice.

However, the Appellant's admission in her reply brief on appeal is again fatal. To reiterate, her admission demonstrates that she failed to diligently seek to enforce her rights against the Appellee within a reasonable period of time. Accordingly, any amendment would have been futile.[3]

For the foregoing reasons, I concur in the result.

---

[3]One final word. The Appellant proclaims that the bankruptcy court was biased against her. I reject any such contention, as the Appellant's arguments are completely unfounded.